Charles STEHLIK and Barbara Stehlik, Plaintiffs-Appellants,

KIMBERLY CLARK CORPORATION and Medicare Part A and Part B, Involuntary-Plaintiffs,

v.

Paul RHOADS, Jill Rhoads, American Standard Insurance Company of Wisconsin and Wilson Mutual Insurance Company, Defendants-Respondents.

Supreme Court

*No. 99–3326. Oral argument September 17, 2001.—Decided June 26, 2002.*

2002 WI 73

(Also reported in 645 N.W.2d 889.)

479

For the plaintiffs-appellants there were briefs by *Douglas B. Keberle* and *Keberle & Patrykus LLP,* West Bend, and *Owen Thomas Armstrong, Jr.* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *Douglas B. Keberle* and *Owen Thomas Armstrong, Jr.*

For the defendants-respondents, Paul and Jill Rhoads and American Standard Insurance Company of Wisconsin, there was a brief by *John U. Schmid, Laurie E. Meyer, Paul F. Graves* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *Laurie E. Meyer.*

For the defendants-respondents, Paul and Jill Rhoads and Wilson Mutual Insurance Company, there was a brief by *Joseph J. Voelkner, James O. Conway* and *Olson, Kloet, Gunderson & Conway,* Sheboygan, and oral argument by *James O. Conway.*

An amicus curiae brief was filed by *Werner Erich Scherr* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, on behalf of Civil Trial Counsel of Wisconsin.

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg Law Offices, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DIANE S. SYKES, J. This case involves an all-terrain vehicle (ATV) accident and presents the issue of the availability and effect of the so-called "helmet defense" in Wisconsin. More particularly, the case raises two central questions: 1) is the "helmet defense" governed by the same principles as the "seat belt defense," and if so, should those principles be modified for purposes of the helmet defense; and 2) can an ATV owner be liable for failing to require adult users of the ATV to wear a safety helmet?

482

¶ 2. Charles Stehlik sustained serious head injuries in an ATV rollover accident. Paul and Jill Rhoads owned the ATV, and Stehlik was operating it with their permission at a party at their home. Although safety helmets were available, Stehlik was not wearing one at the time of the accident. Stehlik sued the Rhoads for negligence and negligent entrustment. He stipulated, however, that had he "been wearing a safety helmet at the time of his accident he would not have sustained any serious head injury."

¶ 3. The special verdict contained separate questions about the parties' respective causal negligence regarding the accident and regarding Stehlik's failure to wear a helmet. The jury concluded that both the Rhoads and Stehlik were negligent, in both respects, and separately apportioned the accident negligence (70 percent/30 percent) and the "helmet negligence" (60 percent/40 percent) between them. The jury also concluded that 90 percent of Stehlik's injuries were attributable to his failure to wear a helmet.

¶ 4. On motions after verdict, the circuit court struck the special verdict questions regarding the Rhoads' negligence for Stehlik's failure to wear a safety helmet, and limited Stehlik's recovery to the damages attributable to the Rhoads' negligence in causing the accident. That is, the circuit court reduced Stehlik's recovery by his 30 percent accident-causing contributory negligence, and by a further 90 percent—the percentage of his injuries the jury allocated to the failure to wear a helmet. Stehlik appealed, and the court of appeals certified the case to us pursuant to Wis. Stat § 809.61 (1997–98).[1]

---

[1] All further statutory references are to the 1997–98 version of the Wisconsin Statutes unless otherwise noted.

¶ 5. We conclude that the issue of a plaintiff's negligent failure to wear a safety helmet while operating an ATV is properly governed by the principles applicable to a plaintiff's negligent failure to wear a seat belt established in *Foley v. City of West Allis,* 113 Wis. 2d 475, 490, 335 N.W.2d 824, 831 (1983). *Foley* separated the consideration of seat belt negligence from accident negligence and adopted a "second collision" methodology, adapted from successive tort and enhanced injury theories, for the treatment of seat belt negligence.

¶ 6. Unfortunately, however, *Foley's* "second collision" analysis has had the consequence of entirely removing seat belt negligence (or here, helmet negligence) from the negligence apportionment equation, because it requires the jury to allocate damages, not negligence, when it considers the issue of the plaintiff's seat belt/helmet negligence. In this context, this approach is inconsistent with a liability system grounded upon the idea of comparative responsibility or fault. Accordingly, we now modify the *Foley* approach for purposes of the helmet defense.

¶ 7. Separate consideration of accident negligence and helmet negligence pursuant to *Foley* remains the rule. Helmet negligence is a limitation on recoverable damages, not a potential bar to recovery under the comparative negligence statute, Wis. Stat. § 895.045. This aspect of *Foley* remains sound and is applicable here.

¶ 8. However, for purposes of the helmet defense, we modify *Foley's* "second collision" construct, at least to the extent that it calls for an allocation of damages rather than an apportionment of negligence on the issue of a plaintiff's helmet negligence. The jury in a helmet defense case should be asked to compare the plaintiff's helmet negligence as against the total com-

484

bined negligence of the defendants, rather than treating the comparison as an allocation or division of injuries or damages, as in a successive tort or enhanced injury case.

¶ 9. Finally, we conclude that for reasons of public policy, an ATV owner cannot be held liable for failing to require adult users of the ATV to wear an available helmet. The jury in this case should not have been asked to determine whether the Rhoads were negligent in failing to require Stehlik to wear a safety helmet, or to engage in a separate comparison of helmet negligence as between Stehlik and the Rhoads. The circuit court properly struck those questions from the jury verdict in this case.

¶ 10. Because the verdict in this case was based upon *Foley*, which we have now modified for purposes of the helmet defense, we reverse and remand for a new trial on the issue of liability only.

I

¶ 11. On September 30, 1994, Paul and Jill Rhoads took delivery of a new ATV. Paul Rhoads signed a warranty registration that contained warnings of the various dangers associated with ATVs, including operating the vehicle with passengers, operating without a safety helmet and other protective gear, operating without qualified ATV training, operating under the influence of alcohol, operating on an incline, and allowing others to operate the ATV without having read the owner's manual or received training. Warnings of some of these dangers were also posted on stickers over the front wheel guards, the back wheel guards, the rear bumper, and on the back of the seat of the ATV.

¶ 12. The next day, the Rhoads had a party at their home. They permitted their guests to operate the

ATV after dark, on an unlit trail on a hill, with passengers, without instructions, without wearing available safety helmets, and after serving them alcoholic beverages.

¶ 13. Charles Stehlik, a guest who had been drinking alcohol both prior to and during the Rhoads' party,[2] decided to take the ATV for a ride. Stehlik was an over-the-road truck driver and part-time law enforcement officer for the Washington County Sheriff's Department and the Slinger Police Department. In addition to his employment-related driving experience, Stehlik had racing experience as a modified stock car racer and also drove motorcycles and mopeds. The parties stipulated that the Rhoads owned safety helmets, and the jury found that a helmet was in fact available for Stehlik's use. Nevertheless, Stehlik did not wear a helmet while driving the Rhoads' ATV.

¶ 14. Initially Stehlik operated the ATV alone, but later gave several passengers a ride, including, at the time of the accident, a four-year-old child.[3] With Stehlik driving and the child aboard sitting in front of him, the ATV rolled over on the side of a hill. Stehlik struck his head against a concrete wall and sustained serious head injuries.

¶ 15. Stehlik sued the Rhoads. Prior to trial, the parties entered into the following stipulation: "The parties have stipulated that had Mr. Stehlik been wearing a safety helmet at the time of his accident he would

_____

[2] Stehlik's blood-alcohol concentration was later determined to be .123 percent.

[3] The child was wearing a helmet at the time of the accident.

not have sustained any serious head injury. The parties have also stipulated that Paul and Jill Rhoads owned such safety helmets."

¶ 16. The jury found both the Rhoads and Stehlik causally negligent with respect to the accident. The jury apportioned 70 percent of the accident negligence to the Rhoads and 30 percent to Stehlik. The jury also determined that a safety helmet was available for Stehlik's use, and that both the Rhoads and Stehlik were negligent with respect to Stehlik's failure to wear a helmet. The jury apportioned 60 percent of this "helmet negligence" to the Rhoads and 40 percent to Stehlik. The jury determined that 90 percent of Stehlik's injuries were attributable to his failure to wear a helmet. The jury fixed Stehlik's damages at $853,277.[4]

¶ 17. On motions after verdict, the Washington County Circuit Court, the Honorable Annette K. Ziegler, concluded that the helmet negligence was passive negligence not subject to a comparative negligence analysis, and so the special verdict questions pertaining to the Rhoads' negligence regarding Stehlik's failure to wear a safety helmet should not have been submitted to the jury. The court struck those questions from the special verdict and reduced Stehlik's damages by 90 percent (the amount attributable to his failure to wear a helmet), and by a further 30 percent (the amount of his contributory negligence in causing the accident), resulting in an ultimate damages award of $54,198. Stehlik appealed, and the court of appeals certified the case to us.

---

[4] The damages award came to $774,257 after subtracting a subrogated medical expense claim.

## II

¶ 18. We review the circuit court's decision regarding the postverdict motions de novo because it presents a question of law. *See Danner v. Auto-Owners Insurance,* 2001 WI 90, ¶ 41, 245 Wis. 2d 49, 65, 629 N.W.2d 159, 168. The Rhoads moved, pursuant to Wis. Stat. § 805.14(5), for an order striking the special verdict questions regarding their liability for helmet negligence, although they did not contend that the evidence was insufficient to sustain the answers. *See* Wis. Stat. § 805.14(5)(c). Rather, they argued that as a matter of law, they could not be liable for the helmet negligence of another. Therefore, while the postverdict motions were not styled as motions for judgment notwithstanding verdict (JNOV), the de novo standard of review, applicable to decisions on JNOV motions, applies here. *See Herro v. DNR,* 67 Wis. 2d 407, 413, 227 N.W.2d 456 (1975)("While not challenging the sufficiency of the evidence to support the facts found in the verdict, [a JNOV motion] may be used to challenge whether the facts found in the verdict are [legally] sufficient to permit recovery.").

## III

¶ 19. This case was submitted to the jury on negligence and negligent entrustment theories.[5] We note initially that the jury was improperly instructed on the negligent entrustment theory of liability. The circuit court used the pattern jury instruction applicable

---

[5] The negligence theory of the case was submitted to the jury by way of the standard pattern jury instructions regarding negligence and the negligence of a property owner. *See* Wis JI—Civil 1005, 8020.

to negligent entrustment cases under § 308 of the Restatement, which was adopted by this court in *Bankert v. Threshermen's Mutual Ins. Co.,* 110 Wis. 2d 469, 476, 329 N.W.2d 150 (1983). *See* Wis JI—Civil 1014; Restatement (Second) of Torts § 308 (1965). The court of appeals has held, however, that § 308 is not applicable to self-inflicted injuries such as Stehlik's. *See Erickson v. Prudential Ins. Co.,* 166 Wis. 2d 82, 95, 479 N.W. 2d 552 (Ct. App. 1991).

¶ 20. Section 308 of the Restatement (Second) of Torts provides:

§ 308 Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm *to others.*

Restatement (Second) of Torts § 308 (emphasis added). In *Erickson,* the court of appeals held that § 308, by its terms, applies only when the person who is negligently entrusted with an item or activity injures someone else, not himself. *Erickson,* 166 Wis. 2d at 95. Here, however, the circuit court modified the pattern jury instruction applicable to § 308, Wis JI—Civil 1014, to conclude with the phrase "unreasonable risk of harm to himself" instead of "unreasonable risk of harm to others," contrary to *Erickson.*

¶ 21. The negligent entrustment theory at issue in this case appears in § 390 of the Restatement:

§ 390 Chattel for Use by Person Known to be Incompetent

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows

or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others who the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). This section of the Restatement was adopted by the court of appeals in *Halverson v. Halverson,* 197 Wis. 2d 523, 530, 541 N.W.2d 150 (Ct. App. 1995). However, there is no pattern jury instruction for use in § 390 cases.

¶ 22. The two theories of negligent entrustment are related but not identical. The commentary to § 390 explains that "[t]he rule stated in this Section is a special application of the rule stated in § 308 . . . . This Section deals with the supplying of a chattel to a person incompetent to use it safely . . . ." Restatement (Second) of Torts § 390, cmt. b. Had the jury been instructed on § 390, it might have concluded that because Stehlik was a professional driver and part-time law enforcement officer experienced in stock car racing, motorcycle, and moped driving, he was not incompetent to use the ATV safely and therefore the Rhoads were not negligent in entrusting him with it. On the other hand, the jury might have concluded that the Rhoads were negligent in entrusting their ATV to Stehlik because he had been drinking and was therefore incompetent to use it safely.

¶ 23. A § 308 claim is a bit broader, and can be asserted any time the circumstances are such that the defendant knew or should have known that the person to whom he is entrusting an item is likely to use it in a way that creates an unreasonable risk of harm to others. But § 308 has never been extended to cases such as this one involving self-inflicted harm by the one to

whom an item is allegedly negligently entrusted. In fact, as noted above, *Erickson* specifically held that it does not apply to such cases. *Erickson,* 166 Wis. 2d at 95.

¶ 24. The distinction noted here may not have made a difference on the facts of this case, and no one raised the issue on appeal. We address it because we are remanding for a liability retrial, and to emphasize that this case should not be construed as a sub silentio overruling of *Erickson* or an extension of § 308 to cases involving self-inflicted injuries. In addition, this discussion has a bearing on our analysis of the liability of an ATV owner for an adult ATV user's failure to wear an available helmet. *See infra* Part V.

IV

¶ 25. The parties dispute whether, and to what extent, the principles applicable to the so-called "seat belt defense" also govern the "helmet defense" asserted here. The seat belt defense was first recognized in *Bentzler v. Braun,* 34 Wis. 2d 362, 385, 149 N.W.2d 626 (1967).

¶ 26. In *Bentzler,* this court concluded that the common law duty to exercise ordinary care for one's own safety contemplated the use of available seat belts to protect against serious injury in an automobile accident. *Id.* The court reached this conclusion "independent of any statutory mandate," *id.,* because of the common knowledge, supported by statistical evidence, that seat belts save lives and reduce injury:

> While it is apparent that these statistics cannot be used to predict the extent or gravity of injuries result-

ing from particular automobile accidents involving persons using seat belts as compared to those who are not using them, it is obvious that, on the average, persons using seat belts are less likely to sustain injury and, if injured, the injuries are likely to be less serious. On the basis of this experience, and as a matter of common knowledge, an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts. A person riding in a vehicle driven by another is under the duty of exercising such care as an ordinarily prudent person would exercise under similar circumstances to avoid injury to himself.

*Id.* at 386–87.

¶ 27. The *Bentzler* analysis of the seat belt defense logically and conceptually applies to the helmet defense asserted in this case. Significantly, the absence of a statute mandating seat belt use was not decisive in *Bentzler;* nor is the absence of a statute mandating helmet use by adult ATV riders decisive here.[6] In this context, as in *Bentzler,* the safety benefits of wearing a helmet while operating or riding a non-enclosed vehicle such as an ATV are a matter of common knowledge, supported by statistical evidence.[7]

---

[6] Children under age 18 are required to wear helmets when riding an ATV. *See* Wis. Stat. § 23.33(3g)(a).

[7] *See* U.S. Consumer Product Safety Commission *CPSP Document #540, http://www.cpsc.gov;* State of Wisconsin, Department of Natural Resources, Accident Reporting and Statistics, *http://www.dnr.state.wi.us;* Wisconsin Briefs, *Motorcycle Safety,* LRB-94–WB-2 (February 1994); and, U.S. Department of Transportation, Nat'l Highway Traffic Safety Adm., *Motorcycle Helmet Use Laws, http://www.nhsta.dot.gov.*

¶ 28. ATVs are, after all, open-air, motorized vehicles capable of reaching moderate to high speeds, and are, by design, intended to be operated on all types of off-road terrain. *See* Gregory B. Rodgers, *All-Terrain Vehicle Injury Risks and the Effects of Regulation,* 25 Accident Analysis & Prevention 335–346 (1993). The risks associated with ATVs are well-known. *See* James C. Helmkamp, *A Comparison of State-Specific All-Terrain Vehicle Related Death Rates, 1990–1999,* 91 Am. J. Pub. Health 1792–1795 (2001). Under these circumstances, an ordinarily prudent person knows or reasonably should know that wearing a safety helmet while operating or riding an ATV protects against serious head injury. Accordingly, consistent with the rationale of *Bentzler,* we conclude that the common law duty of ordinary care for one's own safety can encompass the use of a safety helmet while operating or riding an ATV.[8]

---

[8] Courts in other jurisdictions are split on the issue of the helmet defense. *See e.g.,* cases allowing the helmet defense: *Rodgers v. American Honda Motor Co.,* 46 F.3d 1 (1st Cir. 1995) (holding that the plaintiff could not recover when his failure to wear a helmet caused essentially all of his injuries); *Dailey v. Honda Motor Co.,* 882 F.Supp. 826 (S.D. Ind. 1995) (finding that one's failure to wear a helmet could be relevant in calculating damages); *Warfel v. Cheney,* 758 P.2d 1326 (Ariz. Ct. App. 1988) (recognizing a common law duty to wear a helmet while on a motorcycle); *Halvorson v. Voeller,* 336 N.W.2d 118 (N.D. 1983). *See e.g.,* cases disallowing the helmet defense: *Dare v. Sobule,* 674 P.2d 960 (Colo. 1984) and *Lawrence v. Taylor,* 8 P.3d 607 (Colo. Ct. App. 2000) (disallowing evidence of the plaintiff's failure to wear a helmet while on a motorcycle in order to prove the plaintiff's negligence or failure to mitigate damages); *Kealoha v. County of Hawaii,* 844 P.2d 620 (Haw. 1993) (holding that because there was no common law duty to

¶ 29. We caution that the failure to wear a safety helmet while on an ATV, like the failure to wear a seat belt while in an automobile, is not negligence per se:

> Failure to wear seat belts is not negligence *per se,* but "where seat belts are available and there is evidence before the jury indicating [a] causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts."

*Foley,* 113 Wis. 2d at 483 (quoting *Bentzler,* 34 Wis. 2d at 387). The helmet defense recognized here, like the seat belt defense recognized in *Bentzler,* is generally a question for the jury.[9]

¶ 30. The effect of the seat belt defense on liability and damages was addressed 16 years after *Bentzler* in *Foley.* There, this court distinguished "seat belt negligence" from active and passive negligence and separated the jury's consideration of seat belt negligence from the basic comparison of negligence, estab-

---

wear a helmet, evidence showing that the plaintiff failed to wear one was properly excluded); *Rogers v. Frush,* 262 A.2d 549 (Md. 1970) (stating that the lack of a statute requiring the plaintiff to wear a helmet meant that there could be no negligence for that failure); *Burgstatler v. Fox,* 186 N.W.2d 182 (Minn. 1971) (disallowing evidence that the plaintiff's failure to wear a helmet constituted negligence); *Mayes v. Paxton,* 313 S.C. 109 (S.C. 1993) (holding that the plaintiff's failure to wear a helmet did not constitute negligence).

[9] Our conclusion here pertains to helmet use while operating or riding a motorized, non-enclosed, moderate-to-high-speed vehicle such as an ATV or like vehicle. We do not address the treatment of helmet use in other contexts.

lishing it instead as a limitation on recoverable damages. *Foley,* 113 Wis. 2d at 484–90.

¶ 31. *Foley* described the distinction between active, passive, and seat belt negligence in this way:

> This court has used the term "passive negligence" to describe the conduct of a passenger who fails to use ordinary care for his or her own safety where the passenger's conduct is found to be a cause of his or her injury but not of the collision. Active negligence describes a person's conduct in failing to use ordinary care when that conduct is a cause of the collision. A passenger can be found both actively and passively negligent, depending on the circumstances. *Theisen v. Milwaukee Automobile Mut. Ins. Co.,* 18 Wis. 2d 91, 105, 118 N.W.2d 140 (1962).
>
> It is true that failure to use available seat belts in this case (and in the ordinary case) is not a cause of the collision and would thus appear to fall within the category "passive negligence," but we decline to label seat-belt negligence as "passive" negligence because the seat-belt defense doctrine rests on considerations different from those involved in "passive negligence."
>
> In the usual case of passive negligence, the passenger could have prevented injury completely by taking some action: e.g. refusing to ride with that particular driver at that particular time, or warning of a hazard. In contrast, a passenger who wears a seat belt can not usually avoid all injury. Since failure to wear seat belts generally causes incremental injuries, damage for these incremental injuries can be treated separately for purposes of calculating recoverable damages. In contrast injuries caused by passive negligence are identical to injuries caused by the active negligence in the same accident, and the damages due to passive negligence can not be separated easily for purposes of calculating recoverable damages.

*Id.* at 484–85.

¶ 32. *Foley* then analogized a seat belt defense case to one involving successive torts:

> To understand the distinction between passive negligence and the [sic] seat-belt negligence, it is helpful to think of the automobile accident involving seat-belt negligence as involving not one incident but two. The first incident is the actual collision, in this case the two cars hitting each other. The second incident, which is set in motion by the first and would not occur without it, occurs when the occupant of the vehicle hits the vehicle's interior .... Wearing seat belts is relevant only to the second collision and, as discussed above, may aggravate some of the damages caused by the first collision. Failure to wear seat belts may also cause additional injuries. Negligence and damages can be apportioned between the two incidents.

> Since seat-belt negligence and passive negligence are distinguishable, we must determine whether seat-belt negligence should be treated differently from passive negligence. As a general rule, when there is a logical basis to allocate damages between two or more incidents and among various parties, courts attempt to do so .... Accordingly, since damages can be allocated in a seat-belt defense case between the collision and the seat-belt negligence, we should attempt to do so. Unlike the circuit court, which combined the two types of negligence, we conclude that a fair and administrable procedure, taking into account the public policy underlying the seat-belt defense and the principles of comparative negligence enunciated in sec. 895.045, is to calculate a plaintiff's provable damages by the usual rules of negligence without regard to the seat-belt defense and then take into account the seat-belt defense by decreasing the recoverable damages by the percentage of the plaintiff's causal seat-belt negligence.

*Id.* at 485–87 (citations omitted).

496

¶ 33. *Foley's* analysis—separating the jury's consideration of a plaintiff's seat belt negligence from its consideration of accident negligence—"borrows from the apportionment technique used in two traditional tort doctrines: avoidable consequences and mitigation of damages." *Id.* at 487. Establishing seat belt negligence as a separate limitation on recoverable damages "treat[s] the plaintiff and defendant in such a way that the plaintiff recovers damages from the defendant for the injuries that the defendant caused, but . . . the defendant is not held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seat belt." *Id.* at 489.

¶ 34. *Foley* prescribed the following general procedure for the judge and jury in a seat belt defense case:

> (1) Determine the causal negligence of each party as to the collision of the two cars . . . (2) apply comparative negligence principles to eliminate from liability a defendant whose negligence causing the collision is less than the contributory negligence of a plaintiff causing the collision . . .; (3) using the trier of fact's calculation of the damages, reduce the amount of each plaintiff's damages from the liable defendant by the percentage of negligence attributed to the plaintiff for causing the collision . . .; (4) determine whether the plaintiff's failure to use an available seat belt was negligence and a cause of injury, and if so what percentage of the total negligence causing the injury was due to the failure to wear the seat belt . . .; (5) reduce the plaintiff's damages calculated in step (3) by the percentage of negligence attributed to the plaintiff under step (4) for failure to wear an available seat belt for causing the injury.

*Foley,* 113 Wis. 2d at 490.

¶ 35. The fourth and fifth steps in the process appear to require an apportionment of seat belt negligence as against total injury-causing negligence, and a

497

corresponding reduction in damages. However, if *Foley* is understood as applying a modified successive tort or incremental injury analysis, then what was meant is not an apportionment of negligence at all, but an allocation or division of injuries or damages among distinct causes (the accident and the failure to wear a seat belt), and an accompanying reduction in the plaintiff's recovery.

¶ 36. Indeed, language at the end of the *Foley* opinion refers to the court as having established "the proper method for apportioning *damages* in seat-belt negligence cases." *Id.* at 496 (emphasis added). The court also invited the Wisconsin Civil Jury Instruction Committee to draft an instruction that requires the jury to fix the "percentage of total *damages*" attributable to the plaintiff's failure to wear a seat belt. *Id.* at 495 (emphasis added).

¶ 37. Accordingly, the fourth step in the *Foley* process ordinarily involves a determination of whether the plaintiff's failure to wear a seat belt was negligence, and if so, what percentage of the plaintiff's total *injuries or damages* were attributable to the failure to wear a seat belt. The fifth step calls for a reduction in the plaintiff's recovery by that percentage. *See* Wis JI— Civil 1722A (successive torts), 1723 (enhanced injuries). This is how the circuit court understood and applied the *Foley* procedure here.[10]

¶ 38. It is also how the legislature appears to have understood the *Foley* methodology. In 1987, four years after *Foley,* the legislature enacted a law mandating seat belt use, and included a 15 percent cap on the

_____

[10] Special Verdict Question No. 10 was: "Assuming the total injuries of Charles Stehlik to be 100%, what portion of the injuries was caused by the failure to wear a helmet?" The jury's answer: 90 percent.

amount by which a plaintiff's recovery can be reduced for failure to wear a seat belt under the *Foley* analysis:

> § 347.48(2m) Required use.
>
> . . . .
>
> (g) Evidence of compliance or failure to comply with par. (b), (c) or (d) [requiring seat belt use] is admissible in any civil action for personal injuries or property damage resulting from the use or operation of a motor vehicle. Notwithstanding s. 895.045 [the comparative negligence statute], with respect to injuries or damages determined to have been caused by a failure to comply with par. (b), (c) or (d), such a failure shall not reduce the recovery for those injuries or damages by more than 15%. This paragraph does not affect the determination of causal negligence in the action.

Wis. Stat. § 347.48(2m)(g).

¶ 39. In *Gaertner v. Holcka,* 219 Wis. 2d 436, 580 N.W.2d 271 (1998), this court analyzed the effect of the statutory change as follows:

> By amending Wis. Stat. § 347.48, the legislature explicitly adopted our interpretation of the seat belt defense. Significantly, the legislature sought to pre-serve *Foley*'s attempt to prevent defendants from at-taining a windfall by indicating that "this paragraph does not affect the determination of causal negligence in the action." *See* Wis. Stat. § 347.48(2m)(g). As it is relevant to this opinion, the legislature modified the common law . . . to limit to 15% the potential reduction in plaintiffs' recoverable damages.

*Gaertner,* 219 Wis. 2d at 450.

¶ 40. *Foley*'s "second collision" successive tort theory of seat belt negligence is analogous to enhanced injury case law that has developed in the product

liability context. *See generally Sumnicht v. Toyota Motor Sales, U.S.A, Inc.,* 121 Wis. 2d 338, 352–60, 360 N.W.2d 2 (1984); *Farrell v. John Deere Co.,* 151 Wis. 2d 45, 64–67, 443 N.W.2d 50 (Ct. App. 1989); Wis JI—Civil 1723; *see also* Wis JI—Civil 1722A. Enhanced injury cases draw upon a "second collision" or successive tort analysis in an attempt to fairly allocate responsibility for a plaintiff's damages where there is proof of distinct injury-producing causes converging in the same accident. *See* Restatement (Third) of Torts § 26 (2000).

¶ 41. Applying a modified successive tort or "second collision" theory to a single accident case may make sense when it involves the allocation or division of injuries or damages among demonstrably distinct causes for which different defendants might be responsible. But applying it to the issue of a plaintiff's seat belt or helmet negligence operates to deprive the plaintiff of a jury comparison of the fault associated with his failure to wear a seat belt (or here, a helmet) as against the total fault or responsibility that combined to cause the whole of his injuries or damages.

¶ 42. This aspect of *Foley* has been criticized as generating "problems of fairness and consistency," in that the relative culpability associated with seat belt nonuse is never weighed against the relative culpability of the accident-causing tortfeasor. Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules,* 68 Marq. L. Rev. 539, 542, 547 (1985). Highly aggravated accident-causing negligence might in a given case substantially outweigh the negligence associated with the failure to wear a seat belt or helmet.[11]

---

[11] Professor McChrystal gives the example of "a drunk defendant driving at twice the legal speed [who] injures a

But under *Foley,* the jury does not apportion negligence when it considers the seat belt or helmet defense, it allocates or divides damages, which is a substantially different inquiry.

¶ 43. As Justice Bradley noted in her concurrence in *Gaertner,* "in attempting to partition the seat belt negligence away from the primary tortfeasor's negligence, it appears that the *Foley* court may have also partitioned the primary tortfeasor's negligence away from the seat belt negligence in determining responsibility for enhanced injuries. The *Foley* court seems to have immunized initial tortfeasors from the full consequences of their negligence." *Gaertner,* 219 Wis. 2d at 462 (Bradley, J., concurring.) That is, "a tortfeasor whose conduct caused the initial collision and whose negligent conduct may be a substantial causal factor of the victim's enhanced injuries is not credited with any responsibility for those injuries." *Id.* at 461. In the context of the seat belt defense, the legislature has minimized the potential practical effect of this conceptual problem by imposing a statutory 15 percent cap on the amount by which a plaintiff's recovery can be reduced for failure to wear a seat belt.

¶ 44. We conclude that, as applied to the helmet defense, *Foley's* modified successive tort conceptualization, which in this situation would call for an allocation of helmet injury or damages to the plaintiff regardless of total relative culpability or fault, is inconsistent with a liability system based upon the idea of comparative responsibility. But for the defendants' accident negli-

plaintiff who failed to buckle his seat belt while moving his car from the street in front of his house into his garage." Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules,* 68 Marq. L. Rev. 539, 548 (1985).

gence, the plaintiff would not have sustained any injury at all, whether "helmet injury" or otherwise (assuming, of course, that the plaintiff's own accident negligence does not exceed the defendants'). For this reason, the determination of the amount by which the plaintiff's recovery should be reduced because of his own helmet negligence should take the accident negligence of the defendants into consideration. For purposes of applying *Foley* to the helmet defense, we decline to adopt the modified successive tort concept from the opinion's overall methodology.[12]

¶ 45. The jury in a helmet defense case should determine and apportion accident negligence separately from helmet negligence. Only the former is subject to Wis. Stat. § 895.045, because helmet negligence, like seat belt negligence, is a limitation on damages, not a potential bar to recovery. However, the helmet negligence comparison question should ask the jury to compare the plaintiff's helmet negligence as against the total combined negligence of the defendants, rather than treating the comparison as an allocation or division of injuries or damages, as in a successive tort or enhanced injury case.

.

¶ 46. That is, the jury in a helmet defense case such as this should initially be asked to determine whether each of the parties was negligent with respect to the accident, and if so, whether each party's "accident negligence" was a cause of injury or damage to the

---

[12] This is not intended to alter the seat belt defense, which continues to be governed by *Foley v. City of West Allis,* 113 Wis. 2d 475, 335 N.W.2d 824 (1983), as modified by Wis. Stat. § 347.48(2m)(g).

plaintiff. The jury should then apportion the accident negligence among the parties found to be negligent with respect to the accident, assuming total accident negligence to be 100 percent. The plaintiff's recovery will be reduced or barred under Wis. Stat. § 895.045 depending upon the result of this comparison. The jury should then be asked if a helmet was available for the plaintiff's use, and, if so, whether the plaintiff was negligent in failing to wear a helmet. If the jury answers these questions in the affirmative, it should then decide whether the plaintiff's "helmet negligence" was a cause of his or her injuries or damages. If the jury finds the plaintiff causally negligent with respect to helmet non-use, it should then be asked to compare the plaintiff's helmet negligence as against the total combined negligence of the defendants, as follows: "Assuming the total of the plaintiff's helmet negligence and the combined negligence of the defendant(s) to be 100%, what percentage do you attribute to: 1) the plaintiff's helmet negligence; and 2) the combined negligence of the defendant(s)?"[13] This last comparison is not subject to the Wis. Stat. § 895.045 bar to recovery if the plaintiff's helmet negligence percentage exceeds the defendant(s)'

---

[13] To illustrate, assume the plaintiff's damages to be $100,000, and the jury's answer to the accident negligence apportionment question attributes 70 percent of accident negligence to the defendants and 30 percent to the plaintiff. The plaintiff's damages would be reduced by his 30 percent contributory accident negligence, to $70,000. Assume further that the jury's answer to the apportionment question comparing the plaintiff's helmet negligence as against the combined negligence of the defendants attributes 20 percent to the plaintiff's helmet negligence and 80 percent to the combined negligence of the defendants. The plaintiff's recovery would be reduced by a further 20 percent, to $56,000 (20 percent of $70,000 is $14,000, subtracted from $70,000 leaves a recovery of $56,000).

combined negligence percentage. Under *Foley*, seat belt/helmet negligence operates only to reduce damages, not bar recovery.

¶ 47. We recognize that this second comparison question involves a more abstract value judgment by the jury than does an allocation or division of damages, which is easier to conceptualize and compartmentalize. But juries are called upon to make these sorts of inexact value judgments when they compare negligence in the first instance, and jury instructions can be devised that focus the jurors' attention on the nature of the comparison.

¶ 48. The purpose of the second comparison is to determine the percentage by which the plaintiff's recovery should, in fairness, be reduced because of his helmet negligence, not to divide or separate accident damages from helmet damages. The jury can be reminded that its task is to compare relative culpability or responsibility for total harm, as between the plaintiff's helmet negligence and the combined negligence of the defendants. Removing the successive tort construct means that this second comparison no longer involves a jury determination of discrete categories of divisible injury or damage, but a jury comparison of responsibility or fault.[14]

¶ 49. The special verdict in this case essentially followed the *Foley* allocation of damages approach, which we have now modified for purposes of the helmet

[14] This is essentially consistent with the five-part methodology adopted in *Foley*, 113 Wis. 2d at 490, *see* infra ¶ 34, minus the language elsewhere in the *Foley* opinion that characterizes the approach as involving a division or apportionment of damages.

defense. Accordingly, we reverse and remand the case for a retrial on the issue of liability only.

■

¶ 50. Stehlik also argues that if we apply *Foley* to the helmet defense, we should apply the statutory 15 percent damages reduction cap contained in the seat belt statute to the helmet negligence question. We decline to do so. By its terms, the statute only applies to the failure to wear a seat belt in an automobile, not the failure to wear a helmet on an ATV. We cannot judicially import the statutory cap for use in a category of cases to which it does not explicitly apply.

¶ 51. It may be good public policy, because of the conceptual similarities between seat belt negligence and ATV helmet negligence, to apply the same damages reduction cap to both kinds of cases. But that, ultimately, is a question for the legislature. We conclude that the issue of whether to impose a fixed percentage limitation on the amount by which a plaintiff's recovery may be reduced for his or her failure to wear a helmet on an ATV should be left to the legislature.

## V

■

¶ 52. The final issue in this case concerns the propriety of the special verdict questions separately inquiring about the Rhoads' respective negligence for Stehlik's failure to wear a safety helmet. The Rhoads argue that there is no duty to require a competent adult to take precautions for his or her own safety, such as wearing a helmet on an ATV. Stehlik correctly points out, however, that in Wisconsin, common law limitations on liability are determined not by reference to the absence of a duty, but as a matter of public policy. *See*

505

*Gritzner v. Michael R.,* 2000 WI 68, ¶ 24, 235 Wis. 2d 781, 611 N.W.2d 906. All members of society are " 'held, at the very least, to a standard of ordinary care in all activities.' " *Id.* at ¶ 22 (citing *Rockweit v. Senecal,* 197 Wis. 2d 409, 419, 541 N.W.2d 742 (1995)).

¶ 53. We have already concluded, based upon *Bentzler,* that the standard of ordinary care for one's own safety can encompass the requirement of wearing a helmet while on an ATV. Does the standard of ordinary care for the safety of *others* include the responsibility of requiring *someone else* to wear a helmet on an ATV? "The question of whether public policy considerations preclude liability is a question of law" and is determined by application of the following factors:

> (1) the injury is too remote from the negligence, (2) the injury is too wholly out of proportion to the tortfeasor's culpability, (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm, (4) allowing recovery would place too unreasonable a burden on the tortfeasor, (5) allowing recovery would be too likely to open the way for fraudulent claims, and (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Id.* at ¶ 27 (citing *Rockweit,* 197 Wis. 2d at 426).

■■■

¶ 54. We conclude that the second, fourth, and sixth of these factors weigh heavily in favor of precluding liability here. As a matter of public policy, the normal adult user of an ATV is far more culpable than the ATV owner when it comes to the personal, voluntary decision not to wear an available safety helmet while operating the ATV. Where, as here, the ATV owners made safety helmets available but the ATV user simply chose not to wear one, the degree of culpability is too disproportionate to impose liability.

¶ 55. In addition, to impose liability on an ATV owner for an adult rider's failure to wear a helmet places too unreasonable a burden on the owner, requiring, essentially, that the ATV owner visually monitor its use at all times to ensure helmet use by all riders.

¶ 56. Finally, to impose liability under these circumstances would enter a field that has no sensible or just stopping point. The negligence associated with an adult's decision to forego the use of an available safety device such as a seat belt or a helmet cannot be assigned to someone else, such as the driver of the car or the owner of the ATV. Imposing liability for the helmet negligence of another on the facts of this case would essentially extend the negligent entrustment theories of both § 308 and § 390 of the Restatement beyond their bounds, shifting responsibility for self-inflicted harm that the injured person had the ability and opportunity to protect himself against by the simple expedient of using an available safety device. *See Erickson*, 166 Wis. 2d at 93–95.

¶ 57. Under the now-modified *Foley* approach as applicable to the helmet defense, Stehlik's helmet negligence will be compared against the total combined negligence of the defendants (that is, the Rhoads' negligence as property owners and under negligent entrustment theory) for purposes of arriving at the appropriate reduction in his recoverable damages. But public policy considerations preclude imposing liability on an ATV owner for the failure of an adult ATV user to wear a safety helmet.

¶ 58. Accordingly, we conclude that an ATV owner cannot be liable for failing to require an adult user of the ATV to wear an available safety helmet. The circuit court correctly concluded (although on other grounds) that the jury should not have been asked to

determine whether the Rhoads were negligent with respect to Stehlik's failure to wear a helmet, or to separately apportion helmet negligence between the parties, and properly struck those questions from the special verdict.

¶ 59. Our modification of the *Foley* methodology for purposes of the helmet defense requires a new trial on the issue of liability only.[15] Accordingly, the matter is reversed and remanded for further proceedings consistent with this opinion.

*By the Court.*—The judgment of the Washington County Circuit Court is reversed and cause remanded with directions for further proceedings consistent with this opinion.

¶ 60. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I write separately to express my concerns about the majority opinion's modification of the analysis in *Foley v. City of West Allis,* 113 Wis. 2d 475, 335 N.W.2d 824 (1983). I have concerns about how the new analysis will work as a practical matter. The dissenting opinion points up some of the problems with the new analysis set forth in the majority opinion but fails to recognize the merits of modifying, in common law tradition, the *Foley* approach as problems with the *Foley* approach have come to light.

¶ 61. The majority opinion's analysis has two steps. Like the first step found in the *Foley* analysis, the majority opinion directs a jury to first determine each party's respective accident-causing negligence for the purposes of Wisconsin's comparative negligence law, Wis. Stat. § 895.045.

---

[15] We do not address the further issue raised in this appeal regarding the "five-sixths rule" violation under Wis. Stat. § 805.09(2).

¶ 62. In the second step, the majority opinion departs from the *Foley* analysis by instructing the jury to compare a plaintiff's helmet negligence as against the total combined negligence of the defendants. In this way, the relative culpability associated with the failure to wear a helmet is weighed against the relative culpability of the tortfeasor who caused the accident.[1]

¶ 63. The second step under the new approach is not a comparison of the negligence of the parties causing the plaintiff's divisible injuries, but rather an "abstract value judgment" comparing each party's negligence generally.[2] The jury is asked under the majority opinion to allocate responsibility for the total harm.[3] The dissent makes a good point that the new approach is conceptually difficult to understand and to apply. The majority opinion acknowledges this point.[4]

¶ 64. In the second step, the majority opinion attempts to correct a flaw in the *Foley* analysis: The majority is persuaded that under the *Foley* analysis relating to the division of damages, plaintiffs may not

---

[1] Majority op. at ¶ 8.

[2] Majority op. at ¶ 46 n.13, ¶ 47.

Unlike the second step found in *Foley,* the majority opinion's second step no longer instructs a jury to divide damages by determining what percentage of the plaintiff's total damages are attributable to the plaintiff's failure to wear a helmet. Instead, the jury is instructed to compare the plaintiff's helmet negligence against the total combined negligence of the defendants.

[3] Majority op. at ¶ 48. The majority opinion states that the fact-finder should be able "to compare the plaintiff's helmet negligence as against the total combined negligence of the defendants, rather than treating the comparison as an allocation or division of injuries or damages." Majority op. at ¶ 8.

[4] Majority op. at ¶ 47.

recover for substantial injury self-inflicted by their failure to wear a helmet when but for a defendant's substantial negligence in causing the accident a plaintiff would not have been injured at all.[5] I agree that this problem exists in the *Foley* approach as it has been applied.[6]

¶ 65. The present case falls within the subject generally described in tort treatises as apportionment of liability when damages are divisible, that is, the damages can be divided by causation.[7] The damages are divisible in the present case when expert testimony is offered to show that a part of the plaintiff's total injuries was caused by the accident and a part by the failure to wear a helmet. A fundamental principle of negligence law and apportionment of liability is that when no causal relationship exists between an actor's conduct and the victim's injuries, then the actor is not liable for the injuries.[8] Thus, under the *Foley* analysis, a defendant would not be held liable for incremental

---

[5] Majority op. at ¶ 6, ¶¶ 42–44. *See also Gaertner v. Holcka,* 219 Wis. 2d 436, 462, 580 N.W.2d 271 (1998) (Bradley, J., concurring). *See also* Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules,* 68 Marq. L. Rev. 539, 548 (1985).

[6] See note 14 of the majority opinion. For a case that appears to recognize the same limitations of the *Foley* analysis, but adopts an approach different from that adopted by the majority opinion, see *Waterson v. General Motors Corp.,* 544 A.2d 357, 374–75 (N.J. 1988). Waterson treats the injuries as divisible. I have set forth in an appendix to this opinion the jury instructions and special verdict questions given under *Waterson* to explain this approach.

[7] *Restatement (Third) of Torts, Apportionment of Liability* § 26 (2000).

[8] *Restatement (Second) of Torts* § 430 (1965).

injuries a plaintiff suffered that could have been and should have been prevented by wearing a helmet.[9]

¶ 66. The majority opinion treats the plaintiff's injuries as indivisible. The effect of the majority opinion's analysis is to impose liability on a defendant who negligently causes an accident for some part of the injuries a plaintiff inflicted on himself or herself by failing to wear a helmet.

¶ 67. Despite the modifications made in the *Foley* analysis by the majority opinion, a jury will nonetheless hear evidence about what injury to a plaintiff resulted from a defendant's negligence in causing an accident and what injury to a plaintiff resulted from the plaintiff's failure to wear a helmet. This proof is admissible, as it is under the *Foley* analysis, because the jury is asked under the majority opinion's analysis whether a plaintiff was negligent in failing to wear a helmet and whether that negligence was a cause of the plaintiff's injury.[10] The jury is also asked to determine the relative culpability of the plaintiff against the relative culpability of the tortfeasor who caused the accident.

¶ 68. The jury will thus hear evidence that a plaintiff's injury is divisible, that is, a plaintiff's injury can be divided by causation. The jury will hear evidence about the injury to a plaintiff arising from the accident and the injury to the plaintiff arising from the lack of helmet. Thus, the "apportionment of responsibility or fault," to use the majority opinion's terminology (like the apportionment of causal negligence under the *Foley* analysis), continues to depend on factual determinations about divisible injuries and the relationship be-

---

[9] *Foley v. City of West Allis,* 113 Wis. 2d 475, 489, 335 N.W.2d 824 (1983).

[10] Majority op. at ¶ 46.

tween the negligence of a plaintiff and the negligence of a defendant in causing the plaintiff's injuries.

¶ 69. Although a jury will be asked in the second step of the majority opinion's analysis to undertake a more abstract comparison of responsibility, rather than a more "concrete" comparison of negligence causing divisible damages, the factual evidence of the divisible damages will undoubtedly significantly influence a jury as it attempts to undertake the majority opinion's "more abstract" analysis.

¶ 70. I am concerned whether the majority opinion's approach will be understood by juries, will accomplish its goal, or will substantially change the legal framework that the attorneys and courts of this state have been using for the past two decades. But the attempt to correct the flaw in *Foley* is a step in the right direction.

¶ 71. For these reasons, I write separately.

### *Appendix*

*Waterson v. General Motors Corp.*—New Jersey Jury Instruction: 6.11 Damages—Personal Injuries

J. Damages as Affected by Nonuse of Seat Belt Including Ultimate Outcome *See footnote 1* (6/89)

As I told you earlier, *See footnote 2* defendant's contention that plaintiff was not wearing a seat belt is not relevant in deciding who is at fault for causing the accident. But it may be meaningful in determining the amount of money plaintiff may recover for any injuries you find he/she received. I would now like to tell you how this works.

In order to succeed on this reduction of damages issue, defendant must prove by the greater weight of the evidence that:

1. Plaintiff was not using an available seat belt at the time of the accident. *See footnote 3*

2. Plaintiff was negligent in not using that seat belt at the time of the accident.

3. Plaintiff's injuries were made greater or more severe because he/she was not using a seat belt. In other words, some or all of plaintiff's injuries could have been prevented or avoided if he/she had been using a seat belt. *See footnote 4*

I would like now to talk with you about how you go about deciding if defendant has proven each of these three points to you. You may note that each of these points is set out on the jury verdict sheet as questions ( ).

The first point you must decide is whether defendant has shown that plaintiff was not using an available seat belt at the time of the accident.

The second point that defendant must show is that plaintiff was negligent for not using the seat belt.

Negligence in this type of situation is the failure to use the degree of care for one's own safety and protection that a reasonably prudent person would use in the same or similar circumstances by a reasonably prudent person. I mean neither the most cautious person nor one who is unusually bold, but rather one of reasonable vigilance, caution and prudence.

New Jersey law *See footnote 5* requires the driver [and front seat passengers] of a car to wear a properly adjusted and fastened seat belt while the vehicle is in operation on any street or highway of this State. If you find that the plaintiff was in violation of that law at the time of the accident, you may consider that violation of a statutory duty of care on the issue of negligence. However, the violation is not conclusive as to the issue

of whether plaintiff was negligent. *See footnote 6* It is a factor or circumstance which you should consider in assessing the negligence, if any, of the plaintiff. You may also take into account the prevailing custom of seat belt use at the time of the accident. *See footnote 7* [That is, what percentage generally of the drivers (and front seat passengers) used a seat belt at the time of the accident.] Think about all of these factors in deciding whether plaintiff acted as a reasonably prudent person and, therefore, was or was not negligent in not using a seat belt.

If you decide that a reasonably prudent person would not have been using a seat belt, then you should find that the plaintiff was not negligent and stop deliberating on the seat belt damage reduction claim. *See footnote 8* However, if you decide that a reasonably prudent person would have used a seat belt in that situation at that time, then you should find that the plaintiff was negligent and continue deliberating on the seat belt damage reduction claim.

If you find that the plaintiff was negligent, you must then decide whether the failure to use a seat belt increased the extent or severity of his/her injuries. In making this decision, you are to consider all of the evidence in this case, including the testimony of the expert witness(es) who testified. Think about the total extent of plaintiff's injuries and whether any of those injuries would have been avoided if he/she had been using a seat belt. [WHERE APPLICABLE: If you find that the plaintiff was severely injured, and the evidence shows that his/her severe injuries could not have been avoided by the use of a seat belt, it is immaterial that some very minor injuries could have been avoided by seat belt use. Therefore, if the negligent failure to wear a seat belt had no impact on the extent of the injury, you

514

should cease to consider the seat belt issue. If, on the other hand, you find that the negligent failure to wear a seat belt increased the extent or severity of injuries, you must then evaluate the impact of the failure to wear a seat belt.] *See footnote 9*

If you decide three facts: One, plaintiff was not using an available seat belt at the time of the accident; two, that plaintiff was negligent in not using the seat belt; and three, as a result, plaintiff's injuries were made greater or more severe, then you must make two more decisions. You will see that these appear as questions ( ) on your jury verdict sheet.

The first is to decide what part of plaintiff's injuries would have been avoided if a seat belt had been used. The defendant has the burden of proving this to you. To do this, you must first determine the value of the total damages which plaintiff incurred. Then, you must set the amount of the damages that would have been sustained in the accident if a seat belt had been used. You will subtract that amount from the total damages actually sustained in order to obtain what I will call seat belt damages.

The final decision you must make about the seat belt claim is whether you will allocate or assign some percentage of negligence or fault to plaintiff because of his/her failure to use a seat belt. This is a separate consideration of fault from your earlier one concerning the fault of the parties in causing the accident. The percentage of negligence or fault I am talking about now is only in connection with the increased injuries. For how much of that fault—in a percentage ranging from one to one hundred percent—do you find plaintiff is responsible? *See footnote 10*

515

You may be wondering why you have to make all of these decisions and how they may affect the final outcome of this case. I want to describe that to you now.

From the jury verdict sheet, you can see that you are making two separate decisions about fault. The first one is to the cause of the accident. The second is to the cause of any enhanced or increased injuries which occurred by not using a seat belt.

Understand that you are not being asked to make the mathematical calculations; that will be my job—to put your findings into effect. But I am going to give you some idea as to how your decisions will work in affecting the final outcome in this case. *See footnote 11*

What I shall do is being with your total amount of damages and then separate that money amount into two portions. One portion shall be the sum you calculated for the plaintiff's enhanced injuries as a result of not wearing a seat belt, which I have been calling seat belt damages, and the other shall be the remainder sum of the non-seat belt damages, which is the total damages less seat belt damages.

I shall reduce the non-seat belt damages by the percentage of fault, if any, you decide is plaintiff's for causing the accident. I shall reduce the seat belt damages by the total amount which you decide is plaintiff's for the fault of the accident and the failure to wear the seat belt, taking into consideration defendant's fault for causing the accident. I shall then add the two reduced amounts together to arrive at the total award to the plaintiff.

But, as I said a moment ago, you do not do these calculations. I do them, based on your answers on the jury verdict sheet.

## JURY VERDICT FORM

### (Including Seat Belt Damages)

1. Was D negligent in the operation of his/her motor vehicle?

　　Yes _____ go on to 2.
　　No _____ end your discussions.

2. If D was negligent, was his/her negligence a proximate cause of the accident?

　　Yes _____ go on to 3.
　　No _____ end your discussions.

3. Was P negligent in the operation of his/her motor vehicle?

　　Yes _____ go on to 4.
　　No _____ skip over 4 and 5, and go on to 6.

4. If P was negligent, was his/her negligence a proximate cause of the accident?

　　Yes _____ go on to 5.
　　No _____ skip over 5 and go on to 6.

5. Comparison of negligence in causing the accident:
　　P　　　　_____%
　　D　　　　_____%
　　Total　　　100%

　　Go on to 6 only if the negligence of D in causing the accident is 50% or more; if D's negligence in causing the accident is less than 50%, end your discussions.

6. Was P using an available seat belt at the time of the accident?

Yes _____ skip over 7 and 8 and go on to 9.
No _____ go on to 7.

7. Was P negligent for not using a seat belt?
 Yes _____ go on to 8.
 No _____ skip over 8 and go on to 9.

8. Were P's injuries made greater or more severe because he/she was not using a seat belt?
 Yes _____ go on to 9.
 No _____ go on to 9.

9. P's total damages from the accident: $_____.

Go on to 10 only if you answered 8 as "yes." If you answered 6, 7 or 8 as "no," end your discussions.

10. P's damages, if he/she had used a seat belt
 $ _____.

Go to 11.

11. P's seat damages (answer to 9 minus answer to 10): $ _____.

Go to 12.

12. P's negligence for not using a seat belt: _____%
 (from 1% to 100%).

End your discussions; return your verdict.

Footnote: 1 *This charge incorporates the standards of Waterson v. General Motors Corp., 111 N.J. 238 (1988), but this does not incorporate the standard charge on ultimate outcome regarding liability, which appears at model charge 8.21.*

518

Footnote: 2 *This refers to model charge 5.18M.*

Footnote: 3 Under Federal Motor Vehicle Safety Standards, all passenger automobiles manufactured after June 30, 1986, must be equipped with a safety seat belt system. Since the determination of Waterson that the enactment of N.J.S.A. 39:3–76.2(e) et seq. reinforced a public policy encouraging the use of seat belts, and since those statutes require the driver and front seat passenger to wear a properly adjusted and fastened seat belt, several questions continue after Waterson. For example, could plaintiff be negligent for knowingly occupying a vehicle with a non-functioning seat belt? If there is a factual dispute whether the available seat belt was functional, who has the burden of proving that it was functional? Does the rationale of Waterson apply to vehicles other than passenger automobiles? Does Waterson apply to situations exempted under N.J.S.A. 39:3–76.2(g) from seat belt usage requirements?

Footnote: 4 *Normally, this will require expert testimony. See, Dunn v. Durso, 219 N.J. Super. 383, 388–389 (Law Div. 1986), and Barry v. The Coca Cola Co., 99 N.J. Super. 270, 274–275 (Law Div. 1967).*

Footnote: 5 *N.J.S.A. 39:3–76.2(f). The statute applies only to passenger automobiles, not other vehicles.*

Footnote: 6 *Waterson, supra, 111 N.J. at 263.*

Footnote: 7 *Waterson, supra, 111 N.J. at 266.*

Footnote: 8 *See, Bleeker v. Trickolo, 89 N.J. Super. 502 (App. Div. 1965), and Johnson v. Salem Corp., 97 N.J. 78, 97–98 (1984).*

Footnote: 9 *Waterson, supra, 111 N.J. at 272.*

Footnote: 10 *Query: Does this apply when the plaintiff-front seat passenger is between 5 and 17 years of age. See N.J.S.A. 39:3–76.2(f)(b).*

────────

Footnote: 11 *The process is fully described in Waterson, supra, 111 N.J. at 270–275, especially at 274.*

\*\*\*\*\*

The jury instruction does not fully explain the process used by the court "to mold" the accident-causing negligence and the failure to wear a seat belt or helmet negligence. The molding process is described as follows in *Waterson*:

> [I]f a jury found plaintiff twenty percent liable for an accident and defendant eighty percent liable for the accident, and, further, that plaintiff was twenty percent liable for plaintiff's seat-belt damages due to his failure to use a seat belt, the court would mold these three findings of fault in determining plaintiff's recovery for those damages. The three percentages of fault add up to 120%. The court would add the two findings of plaintiff's negligence (twenty percent for causing the accident, twenty percent for failure to use a seat belt), which total forty percent. The sum of forty percent would become the numerator of a fraction in which the denominator would be 120, or the total of all three findings of negligence (defendant's eighty percent fault for causing the accident, plaintiff's twenty percent fault for causing the accident, and plaintiff's twenty percent fault for not wearing a seat belt). This fraction results in a finding of 33–1/3%, which reflects the amount by which the court would reduce plaintiff's recovery for seat-belt damages due to the negligent failure to use a seat belt.

*Waterson*, 527 A.2d at 375.

¶ 72. N. PATRICK CROOKS, J. *(dissenting)*. I agree with the majority opinion that the seat-belt defense, first expressed in *Bentzler v. Braun,* 34 Wis. 2d 362, 149 N.W.2d 626 (1967), "logically and conceptually applies to

the helmet defense asserted in this case." Majority op. at ¶ 27. I respectfully dissent, however, because rather than applying the seat-belt defense as later discussed and clarified in *Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983), to the helmet defense asserted here, the majority opinion substantially modifies, and in effect rejects, that approach for purposes of the plaintiff's failure to wear a helmet. I conclude that the seat-belt and helmet defenses are analogous; therefore, I would apply the seat-belt defense methodology as stated in *Foley* to the helmet defense here.

¶ 73. The majority opinion acknowledges and discusses the *Foley* decision, but then refuses to apply it to this case. The majority rationalizes its substantial modification of *Foley* by stating that the *Foley* approach, asking a jury to allocate damages when it considers the seat-belt/helmet defense, is inconsistent with comparative responsibility or fault. Majority op. at ¶ 6. The majority claims that the *Foley* approach, which is analogous to a successive tort or second collision approach, when applied to a plaintiff's seat-belt or helmet negligence "operates to deprive the plaintiff of a jury comparison of the fault associated with his failure to wear a seat belt (or here, a helmet) as against the total fault that combined to cause the whole of his injuries or damages." *Id.* at ¶ 41. The majority, therefore, withdraws part of the *Foley* methodology as applied to helmets, and instead reduces damages based on the plaintiff's helmet negligence by comparing the plaintiff's helmet negligence with the total combined negligence of all of the defendants. *Id.* at ¶ 45. I cannot join the majority's opinion because I disagree with its significant modification of *Foley* as applied to the plaintiff's failure to wear a helmet.

¶ 74. The majority's modification of *Foley* as applied to helmet negligence, is an unnecessary departure from the reasoning and methodology adopted by this court 19 years ago. By asking a jury to compare the plaintiff's helmet negligence with the combined negligence of all of the defendants, the majority opinion is contrary to the original reason for adopting the successive tort or separate incident or collision approach that was applied in *Foley*.[1] We specifically rejected the idea of comparing the plaintiff's seat-belt negligence and the combined negligence of all of the defendants when we adopted the *Foley* methodology. "[I]t is not logical or necessary to view the negligence causing the collision together with plaintiff's seat-belt negligence in a one-dimensional way when there are actually two distinct incidents contributing to the injuries." *Foley*, 113 Wis. 2d at 488. The majority's rejection of *Foley* runs counter to this language because, although the majority does not treat helmet negligence as a complete bar to the plaintiff's recovery of damages, it now asks the jury to

---

[1] I note that rather than describing seat-belt cases as involving two separate incidents or collisions, the better description might be to indicate that the case is similar to one involving separate injuries.

> The holding in *Foley*, by insulating the tortfeasor from liability for injuries caused in part by the victim's seat belt negligence, divides the injuries on a basis different from initial collision *versus* second collision. It is misleading for the *Foley* court to describe the two parts of a seat belt negligence case as the first collision and second collision or as involving two incidents. Most likely, greater clarity could be achieved by describing the two parts of the case as the *seat belt injury* part and the *basic injury* part.

Michael K. McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules,* 68 Marq. L. Rev. 539, 542 n. 9 (1985) (emphasis in original).

compare two unrelated incidents of negligence: plaintiff's helmet negligence versus the total combined negligence of all of the defendants. There is no longer a distinction based on a concept of separate incidents, or separate injuries, because the jury is now asked to look at the accident as a whole, in regard to the defendants, but not the plaintiff, when it compares the plaintiff's helmet negligence with all of the negligence of the defendants. The majority is, in effect, asking a jury to make an almost impossible comparison—to compare apples to oranges. I find the majority's modified approach conceptually difficult to understand and apply, and I agree with our original statement in *Foley* that such an approach "is not logical or necessary." *Id.*

¶ 75. We also stated in *Foley* that we adopted the methodology in an effort to hold a defendant liable for only the damages the defendant caused.

> We should seek to treat the plaintiff and defendant in such a way that the plaintiff recovers damages from the defendant for the injuries that the defendant caused, but that the defendant is not held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seatbelt.

*Id.* at 489. The majority's significant modification of *Foley* runs contrary to this original purpose of separating the responsibility and damages caused by the accident from the responsibility and damages caused by a person's failure to wear a seat belt, or here a helmet. By asking the jury to compare the plaintiff's helmet negligence with combined negligence of all of the defendants, which clearly includes accident-causing negligence, the majority is no longer distinguishing between what the defendant caused and what "injuries the

plaintiff could and should have prevented by" utilizing a safety device, and then allocating damages accordingly. *Id.*

¶ 76. The majority's goal in modifying or rejecting *Foley* seems to be to protect the plaintiff from a dramatically reduced damages recovery, which is possible under *Foley,* for failure to wear a helmet. Its method of achieving that goal—by modifying the jury's negligence comparison—however, is unnecessary. I conclude that rather than modifying *Foley* to create impliedly a cap on the reduction of a plaintiff's damages, or judicially importing a statutory cap similar to that created by the legislature for seat-belt negligence, the decision regarding whether and how much of a cap should exist, is one appropriately left to the legislature.

¶ 77. The majority opinion specifically rejects applying the 15 percent statutory reduction cap for seat-belt nonuse in Wis. Stat. § 347.48(2m)(g) to helmet nonuse. Majority op. at ¶ 50. I agree that the statute applies only "to the failure to wear a seat belt in an automobile, not the failure to wear a helmet on an ATV." *Id.* Accordingly, I also agree with the majority's statement that whether a similar damages reduction cap should be applied to helmet negligence is a policy choice appropriately left to the legislature. Contrary to the majority's approach, however, I would not try to create a cap judicially by modifying the negligence comparison developed in *Foley.* Rather, I would apply *Foley* to helmet negligence, including whatever consequences it may have for a reduction in damages for a plaintiff's failure to wear a helmet. As the legislature did with seat-belt negligence by enacting § 347.48(g), the legislature may decide, similarly, to cap a plaintiff's reduction for failure to wear a helmet or use another analogous safety device. This decision, however, is correctly a

legislative one; this is not a decision for our court. We should not judicially create a statutory cap, nor should we modify the negligence comparison of *Foley* to attempt to create one. Accordingly, I conclude that the majority's rejection of *Foley's* approach is unnecessary.

¶ 78. In addition to the reasons already stated, I cannot join the majority opinion because its rejection of the *Foley* approach changes the legal framework that the attorneys and the courts of this state have been using and relying on for 19 years. As demonstrated by the circuit court's application of *Foley* to helmets in this case, the *Foley* method is workable and has been relied on since its adoption. Moreover, by its rejection of the *Foley* approach as applied to helmets, the majority opinion creates unanswered questions regarding why *Foley* is still viable for seat-belt cases, but not helmets, and regarding which approach should be applied to other analogous safety devices. The majority's opinion fails to give a reason why seat belts and helmets should be treated differently, which, therefore, raises serious doubts about the continued viability of *Foley* in seat-belt cases. In contrast, the majority seems to concede that seat belts and helmets are analogous safety devices. Majority op. at ¶ 27. Furthermore, rejecting the *Foley* approach as applied to helmets creates additional confusion for future cases involving other analogous safety devices. It is unclear whether the *Foley* analysis or the majority's new approach should be applied in such cases.

¶ 79. For these reasons, I reject the majority's substantial modification of *Foley* and, therefore, I would affirm the judgment of the circuit court. Here, Circuit Court Judge Annette Ziegler correctly adapted and applied the *Foley* methodology in her rulings on motions after verdict and when the jury was asked to

answer Special Verdict Question No. 10: "Assuming the total injuries of Charles Stehlik to be 100%, what portion of the injuries was caused by the failure to wear a helmet?"

¶ 80. For the reasons stated, I disagree with the majority opinion's modification of *Foley* as applied to the plaintiff's failure to wear a helmet. Therefore, I respectfully dissent.