Claudia A. ERICKSON, individually, and as personal representative, of the estate of Michael D. Erickson, deceased, and as guardian ad litem for Kelli M. Erickson, and Keith M. Erickson, Plaintiffs-Appellants,

v.

PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, William R. Lockwood, American Family Mutual Insurance Company, Thomas J. Zangl, E.C. Miller, and Pilon Adjustment Service, S.C., Defendants-Respondents.

Court of Appeals

*No. 90-2663. Submitted on briefs July 2, 1991.—Decided December 5, 1991.*

(Also reported in 479 N.W.2d 552.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Douglas W. Plier* of Horicon.

For the defendants-respondents the cause was submitted on the brief of *Robert G. Wixson* of *Winner, Wixson & Pernitz* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. Michael Erickson was killed while cutting a tree branch with a chain saw owned by Thomas Zangl. Erickson's wife, Claudia, appeals from a summary

judgment dismissing her negligence complaint against Zangl and his insurer, American Family Mutual Insurance Company.

We conclude that the trial court properly dismissed Claudia's negligent entrustment claim. We further conclude, however, that the trial court erred by dismissing Claudia's negligent "failure to warn" claim. We therefore affirm in part, reverse in part, and remand with instructions.

## I. BACKGROUND

William Lockwood asked Michael Erickson and Zangl to assist him in removing a damaged tree from his yard. On January 22, 1985, Michael and Zangl began cutting the large lower limbs of the damaged tree with Zangl's chain saw. After Zangl had cut two limbs, he gave the chain saw to Michael. Michael climbed the tree and, while standing in the crotch of a limb, reached out and began sawing. The limb cracked at its midsection and the lower portion of the limb springpoled[1] back and pinned Michael to the tree, killing him.

Claudia Erickson, individually and as personal representative of Michael's estate, and as guardian ad litem for Kelli and Keith Erickson, brought a negligence action against Zangl. The trial court granted Zangl's motion for summary judgment.[2] Claudia appeals.

---

[1] "Springpoling" describes the phenomenon that occurs when tree limb bent by the weight of its own branches is cut at midsection.

[2] Defendants Prudential Property and Casualty Insurance Company (Lockwood's insurer), E.C. Miller, and Pilon Adjustment Service, S.C., also filed motions for summary judgment on unrelated claims. The trial court denied these motions.

## II. STANDARD OF REVIEW

Section 802.08, Stats., governs summary judgment. Summary judgment methodology is well established. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Our review is *de novo* and independent of the trial court's decision. *See Id.*

## III. NEGLIGENCE

Claudia's amended complaint alleges that Zangl was negligent in the following respects:

1. By failing to assist Michael by securing the limb with a safety rope;

2. By permitting Michael to use Zangl's chain saw "without taking reasonable steps to identify and avoid the danger of injury to the deceased"; and

3. By failing to warn Michael of the danger posed by the tree-cutting maneuver.

Claudia's complaint states a cause of action for wrongful death. Zangl's answer generally denies the complaint and alleges, as an affirmative defense, that Michael was contributorily negligent. This answer joins issue.

In support of his motion for summary judgment, Zangl submitted his own depositional testimony. He deposed that he and Michael had together cut tree limbs and split logs on numerous occasions prior to the accident. Zangl also deposed that Michael could change the chain on the saw without assistance.

In opposition to the motion, Claudia relied upon the chain saw instruction manual.[3] The manual provides in

---

[3]Claudia also submitted an affidavit describing a series of photos taken by E.C. Miller, an insurance adjuster, of the acci-

part:

### Debranching (Cutting the limbs from a fallen tree)

● Cut On The Opposite Side Of The Tree—keep the tree between you and the chain.

● Be Sure Of Your Footing—work slowly and deliberately.

● *Look Out For Springpoles—limbs bent under pressure will snap up at you when cut.* [Emphasis added.]

Zangl deposed that he could not recall whether he had read the instruction manual.

The elements in a cause of action for negligence are: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976). Like most jurisdictions, Wisconsin does not generally impose a duty upon persons to protect others from hazardous situations. *Winslow v. Brown,* 125 Wis. 2d 327, 331, 371 N.W.2d 417, 420 (Ct. App. 1985). The rationale for not allowing "failure to act" as a basis for liability "may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no

---

dent scene. The photos were attached as exhibits. Affidavits must be based on personal knowledge and set forth admissible evidentiary facts. *Leszczynski v. Surges,* 30 Wis. 2d 534, 538–39, 141 N.W.2d 261, 265 (1966). Claudia did not aver that she personally viewed the accident scene following her husband's death. We therefore may not consider the photos.

worse." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56 at 373 (5th ed. 1984).

Seeking to avoid the effect of this general rule, Claudia argues that she has put forward sufficient evidence to support claims that Zangl (1) negligently failed to warn Michael and (2) negligently entrusted Michael with the chain saw.

## A. FAILURE TO WARN

Restatement (Second) of Torts § 388 (1965) (hereinafter "Restatement"), which governs the duty to warn in negligence actions, states:

> **Chattel Known To Be Dangerous for Intended Use**
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

██

Section 388 has been adopted in this state. *See Estate of Schilling v. Blount, Inc.,* 152 Wis. 2d 608, 618–20, 449 N.W.2d 56, 60–61 (Ct. App. 1989). In order

to state a claim under section 388, a party must satisfy all three subsections (a), (b) and (c).

Claudia argues that Zangl, as the supplier of the saw, had a duty to inform Michael of the danger of springpoling. The definition of "suppliers" includes "sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person." Restatement § 388 cmt. c.

*1. Subsection (a): "knows or has reason to know"*

Comment g. to Restatement § 388 explains subsection (a):

> The duty which the rule stated in this Section imposes upon the supplier of a chattel for another's use is to exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used.

To find against Claudia under subsection (a), we must conclude, as a matter of law, that the danger of springpoling did not render the chain saw "dangerous for the use for which it [was] supplied," or that, even if it did, the evidence is insufficient to create a factual issue concerning whether Zangl had "reason to know" of the danger. Section 388(a).

We cannot so hold. While the evidence in this case is slight, a reasonable jury could find that Zangl, by virtue of his ownership of the instruction manual, had

"reason to know" of the risk involved.[4] This question is properly one for a jury to determine.

## 2. Subsection (b): "no reason to believe"

Comment k. to section 388 explains that subsection (b) should be interpreted to impose no duty to warn where the danger is open and obvious.[5] *See Schilling,* 152 Wis. 2d at 619–20, 449 N.W.2d at 60. Thus, courts have found no duty to warn of the risks involved in shooting a handgun,[6] putting one's hand under a running rotary lawn mower,[7] attempting to remove snow from a clogged snowblower,[8] using a table saw to cut a piece of wood with a knot in it,[9] sailing a boat into low-hanging power lines,[10] or scooping potatoes from between the

---

[4]Throughout the Restatement, the phrase "reason to know" means:

> [T]hat the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

Restatement § 12(1).

[5]Comment k. to Restatement § 388 states in part: "It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition *which a mere casual looking over will disclose.*" (Emphasis added.)

[6]*Riordan v. International Armament Corp.,* 477 N.E.2d 1293, 1296–97 (Ill. App. Ct. 1985).

[7]*Mele v. Turner,* 720 P.2d 787, 789–91 (Wash. 1986).

[8]*Cotroneo v. Sabatino,* 377 N.Y.S.2d 317, 318–19 (N.Y. App. Div. 1975), *aff'd,* 362 N.E.2d 259 (N.Y. 1977).

[9]*Hagans v. Oliver Mach. Co.,* 576 F.2d 97, 104 (5th Cir. 1978).

[10]*McPhail v. Municipality of Culebra,* 598 F.2d 603, 606–07 (1st Cir. 1979).

blades of a potato grinder.[11]

We do not believe the danger of a springpoling tree limb is akin to any of the risks involved in the above-cited cases. The risk was not "patent and obvious." *See McPhail v. Municipality of Culebra,* 598 F.2d 603, 607 (1st Cir. 1979). Rather, it involved a "freak," unusual occurrence. Zangl's explanation of the accident is illuminative:

> I remember the limb going down and as the bushy end of the tree on the other end over there hit the ground, I heard a crack, it hit the ground and it kind of split up the middle and for the life of me just went back up and pinned him to the tree.

We conclude that the risk involved was not open and obvious.

*3. Subsection (c): "fails to exercise reasonable care"*

Subsection (c) requires that a defendant "fail[ ] to exercise reasonable care to inform [the plaintiff] of [the] dangerous condition." Section 388(c). A person fails to exercise reasonable care when he or she does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject another to an unreasonable risk of injury or damage. *Peters v. Holiday Inns, Inc.,* 89 Wis. 2d 115, 122-23, 278 N.W.2d 208, 211-12 (1979). "The supplier's duty is to exercise reasonable care to inform those for whose use the article is supplied of dangers which are peculiarly within his knowledge." Restatement § 388 cmt. *l.*

---

[11]*Plante v. Hobart Corp.,* 771 F.2d 617, 620 (1st Cir. 1985).

The issue presented is whether Zangl failed to exercise ordinary care by not becoming apprised of the risks involved in operating the chain saw and informing Michael of those risks. The standard applied under subsection (c) is akin to that applied in common-law negligence actions. Thus, for us to hold that no jury question is presented and that Zangl was not negligent as a matter of law, we "must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [Zangl] failed to exercise ordinary care." *Shannon v. Shannon*, 150 Wis. 2d 434, 442, 442 N.W.2d 25, 29 (1989) (citations omitted).

We cannot so find. Like the question of whether Zangl "knew or had reason to know" of the risk, we conclude this question is properly one for a jury to decide. We hold the trial court erred by dismissing Claudia's negligent "failure to warn" claim against Zangl.

## B. NEGLIGENT ENTRUSTMENT

Claudia argues that Zangl "negligently entrusted" the chain saw to Erickson. She bases her argument on sections 390 and 308 of the Restatement.

### 1. Section 390

Section 390 of the Restatement states:

**Chattel for Use by Person Known to be Incompetent**

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the sup-

plier should expect to share in or be endangered by its
use, is subject to liability for physical harm resulting
to them.

Claudia argues that, because Zangl was in possession of
the owner's manual, knowledge of the springpoling dan-
ger can be imputed to Zangl. Further, Claudia contends,
Michael was "inexperienced" in handling the saw.

We disagree. The undisputed evidence shows that
Michael Erickson was an experienced chain saw user.
Zangl deposed:

> [Erickson] has cut limbs off tree trunks. I have seen
> him do that and we have cut logs together to go to the
> splitter and he has helped me split wood; the whole
> ball of wax, the whole nine yards.

Zangl also deposed that, prior to the accident, Michael
had operated the chain saw "many, many times."

Claudia produced no evidentiary facts to controvert
this testimony. Evidentiary matters in affidavits accom-
panying a motion for summary judgment are deemed
uncontroverted when competing evidentiary facts are
not set forth in counter-affidavits. *Wisconsin Elec.
Power Co. v. California Union Ins. Co.*, 142 Wis. 2d 673,
684, 419 N.W.2d 255, 259 (Ct. App. 1987). We conclude
that the trial court properly dismissed Claudia's claim
under section 390 of the Restatement.

### 2. Section 308

Claudia argues that section 308 of the Restatement
is applicable. Section 308 states:

**Permitting Improper Persons to Use Things or
Engage in Activities**

94

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Zangl urges that section 308 is inapplicable to the facts of this case. He contends that section 308 only applies to conduct involving the creation of an unreasonable risk of harm to *others,* not to the actor himself.

We agree. Unlike section 390, which encompasses conduct involving "unreasonable risk of physical harm to himself and others," section 308 only covers conduct creating an "unreasonable risk of harm to *others.*" (Emphasis added.)

We believe the drafters of the Restatement did not intend that section 308 be applicable to self-inflicted injuries. This interpretation is supported by the illustrations accompanying section 308,[12] each of which involve an injury to a third party, rather than to the actor.

[12] 1. A permits B to drive his car. B is a girl of 14 who, to A's knowledge, has never driven a car before. B's inexperience causes a collision in which C is hurt. A is negligent toward C.

2. A lends his car to B, whom he knows to be intoxicated. B's intoxicated condition leads him to cause harm to C. A is negligent toward C.

3. A and B have agreed to take two young women, in A's car, to a dance at a roadhouse and have stocked the car with liquor. A, the owner of the car, is prevented from going on the party and lends his car to B. The party takes place and B gets drunk, as A knows that he has done on other similar occasions, and while drunk drives the car recklessly, causing harm to C. A is negligent toward C.

4. A lends his automobile to B, whose license has to A's knowledge

We conclude the trial court properly dismissed Claudia's claim for negligent entrustment under both sections 390 and 308 of the Restatement.[13]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

been revoked for reckless driving. B drives the automobile negligently, running down C. A is negligent toward C.

[13]Claudia cites a previous *per curiam* decision in this case in which we refused, upon the request of defendants, to "sift through [Claudia's] affidavit to attempt to determine which allegations are insufficient." *Erickson v. Prudential Property and Casualty Ins. Co.,* No. 87-2373, unpublished slip op. at 16 n.3 (Wis. Ct. App. Nov. 10, 1988) (citation omitted). We concluded "the affidavit contains sufficient allegations to raise an issue of material fact." *Id.*

That decision, did not consider the merits of Claudia's negligence claim. The issues were "whether a proceeding under sec. 895.04(2), Stats., to approve a settlement in favor of Kelli and Keith is *res judicata* as to any of the respondents and whether releases executed by Claudia Erickson for the estate of Michael Erickson and by the children's guardian ad litem bar this action." *Erickson,* unpublished slip op. at 2.