Dora O. ALVARADO and Lenny Gonzales, Jessica Gonzales, Billy Gonzales, Roberto Gonzales, by their Guardian ad Litem, Donald J. Murphy, Plaintiffs-Appellants-Petitioners,

PARTNERS MUTUAL INSURANCE, Subrogated Party-Plaintiff,

v.

Peter SERSCH d/b/a D.P. Painters and Hastings Mutual Insurance, Defendants-Intervenors,

OAKBROOK CORPORATION, ABC Unidentified Insurance Company, Meriter Retirement Services, Inc., and OHIC Insurance Company, Defendants-Respondents.

Supreme Court

*No. 01–1715. Oral argument March 18, 2003.—Decided June 5, 2003.*

2003 WI 55

(Also reported in 662 N.W.2d 350.)

75

For the plaintiffs-appellants-petitioners there were briefs by *Daniel W. Hildebrand* and *DeWitt Ross & Stevens S.C.,* Madison, and *Donald J. Murphy* and *Murphy Vaughn & Pressentin LLC,* Monona, and oral argument by *Daniel W. Hildebrand.*

For the defendants-respondents there was a brief by *John A. Nelson, Timothy W. Feeley,* and *von Briesen & Roper, S.C.,* Milwaukee, and oral argument by *John A. Nelson.*

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Dora Alvarado and her four minor children, seek review of a published court of appeals decision affirming a circuit court grant of summary judgment in favor of the respondents, Oakbrook Corporation, Meriter Retirement Services, Inc., and Meriter's insurer.[1] Alvarado asserts that the court of appeals erred in using public policy factors to limit liability before all the facts were considered. Because we conclude that there are genuine issues of material fact, we determine that the court of appeals erred when it affirmed the grant of summary judgment limiting liability based on public policy factors. Accordingly, we reverse the court of appeals and remand the action to the circuit court for further proceedings.

---

[1] *Alvarado v. Sersch,* 2002 WI App 227, 257 Wis. 2d 752, 652 N.W.2d 109 (affirming a judgment of the circuit court for Dane County, Angela B. Bartell, Judge).

78

¶ 2. Meriter Retirement Services, Inc. (Meriter) owns student apartments in Madison that are managed by Oakbrook Corporation (Oakbrook). On August 12, 1998, during the busy student turnover period, Oakbrook's property manager walked through a vacated apartment to inspect the premises. In his deposition he testified that "cabinets" were on his checklist, but he did not remember checking them.

¶ 3. On August 13, 1998, a painting crew entered the apartment. One of the painters discovered what he believed to be a "candle" in the kitchen cabinet. Another painter recognized it as a firework device. They moved the item out of the way and continued working. No one in the crew informed Oakbrook or Meriter about the firework.

¶ 4. On August 14, 1998, Dora Alvarado and Ron Boehm, the owner of the janitorial service retained by Oakbrook, entered the apartment to clean it. Alvarado had already completed a ten- to eleven-hour shift that day, but had been called back to work. Boehm noticed what he thought to be a candle on the windowsill. He commented to Alvarado that it was a "strange looking candle." It was described as a wax candle with red, white, and blue colors, about six inches tall, and an inch in diameter.

¶ 5. After Boehm left the apartment, Alvarado began cleaning the interior of the gas stove. She opened the stovetop to expose the burner trays for vacuuming. Alvarado knew it was necessary to preserve the flame of the pilot light, which occasionally extinguished during the cleaning process. Because she had forgotten to bring matches, she decided to use the "candle" to preserve the flame, and lit the device with the pilot

flame. The firework exploded as she was setting it down, blowing off most of her right hand.

¶ 6. Alvarado and her children filed a complaint in Dane County circuit court against Meriter, Oakbrook, the painting contractor, and each of their insurers. The plaintiffs sought damages as a result of Alvarado's personal injuries.

¶ 7. The circuit court granted Oakbrook and Meriter's motion for summary judgment. It concluded that Oakbrook and Meriter did not have a duty of care to protect Alvarado from a potential harm they neither knew nor reasonably could have foreseen.

¶ 8. The court of appeals affirmed the circuit court's grant of summary judgment for Oakbrook and Meriter, but employed a different rationale. Rather than focusing on negligence, the court of appeals considered public policy factors that limit a defendant's liability. It concluded that the injury was too remote from the negligence, and in retrospect it appeared too highly extraordinary that the negligence should have resulted in the harm. Under this analysis, the court of appeals determined that public policy barred any imposition of liability, and therefore it affirmed the circuit court's grant of summary judgment.

## II

¶ 9. Alvarado seeks a reversal of the court of appeals' decision, and a remand for a jury trial. She argues that it was improper for the court of appeals to use public policy considerations to limit liability before all the facts had been presented to a jury for a determination of negligence. She asserts that the grant of summary judgment was error because there remain genuine issues of material fact.

¶ 10.  Summary judgments are reviewed applying the same methodology a circuit court uses under Wis. Stat. § 802.08(2). *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no genuine issues of material fact then the moving party is entitled to a summary judgment as a matter of law. *Id.;* Wis. Stat. § 802.08(2) (2001–02).

¶ 11.  Whether it was proper for the court of appeals to use public policy considerations to limit liability before all the facts had been presented in a negligence determination is a question of law subject to independent appellate review. *Gritzner v. Michael R.,* 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906.

¶ 12.  In addressing the court of appeals' reliance on public policy to affirm the circuit court's grant of summary judgment, we first briefly summarize the laws of negligence and liability that are relevant to this case. We then apply the law and conclude that the court of appeals erred when it affirmed the grant of summary judgment, limiting liability based on public policy factors prior to trial.

## III

¶ 13.  Wisconsin has long followed the minority view of duty set forth in the dissent of *Palsgraf v. Long Island Railroad. Rockweit v. Senecal,* 197 Wis. 2d 409, 419–20, 541 N.W.2d 742 (1995). In that dissent, Judge Andrews explained that "[e]veryone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting).

¶ 14. Every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care. *Gritzner,* 235 Wis. 2d 781, ¶¶ 20 & 22. In Wisconsin a duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person. *Id.,* ¶ 20. Under the general framework governing the duty of care, a " 'person is not using ordinary care and is negligent, if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.' " *Id.,* ¶ 22 (quoting Wis JI—Civil 1005).

¶ 15. The question of duty is nothing more than an "ingredient in the determination of negligence." *A.E. Investment Corp. v. Link Builders,* 62 Wis. 2d 479, 484, 214 N.W.2d 764 (1974). Once it has been determined that a negligent act caused the harm, "the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy." *Id.* at 485.

¶ 16. The "duty" ingredient of negligence should not be confused with public policy limitations on liability.[2] "[T]he doctrine of public policy, not the doctrine of

---

[2] In *Gritzner* this court aptly noted the confusion as follows:

As the defendant notes, some Wisconsin cases have examined liability limitations in terms of duty. *See Estate of Becker v. Olson,* 218 Wis. 2d 12, 579 N.W.2d 810 (Ct. App. 1998); *Zelco v. Integrity Mut. Ins. Co.,* 190 Wis. 2d 74, 527 N.W.2d 357 (Ct. App. 1994); *Erickson v. Prudential Property and Cas. Ins. Co.,* 166 Wis. 2d 82, 479 N.W.2d 552 (Ct. App. 1991). This formulation of the analysis is incorrect under Wisconsin law. In Wisconsin, everyone has a duty

duty, limits the scope of the defendant's liability." *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 644, 517 N.W.2d 432 (1994). "In Wisconsin, one always owes a duty of care to the world at large, which is why '[t]he consistent analyses of this court reveal that the question of duty is not an element of the court's policy determination." *Rockweit,* 197 Wis. 2d at 433 (Abrahamson, J. concurring) (quoting *A.E. Investment,* 62 Wis. 2d at 484).

¶ 17.   Thus, negligence and liability are distinct concepts. *A.E. Investment,* 62 Wis. 2d at 484–85. After negligence has been found, a court may nevertheless limit liability for public policy reasons. *Gritzner,* 235 Wis. 2d 781, ¶ 24; *Rockweit,* 197 Wis. 2d at 421; *A.E.*

to act with reasonable care. Liability for breach of that duty is limited on public policy grounds. *See Rockweit v. Senecal,* 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995) (explaining that although some cases have denied liability on the basis that an actor had no "duty" to the injured party, the decision to deny liability is essentially one of public policy and not duty or causation). *See also Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 644–45, 517 N.W.2d 432 (1994)(explaining that in deciding whether to impose liability for negligence, Wisconsin courts use a public policy formulation rather than a foreseeability or duty formulation) (citing *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 183, 77 N.W.2d 397 (1956)); *Schuster v. Altenberg,* 144 Wis. 2d 223, 266, 424 N.W.2d 159 (1988) (Steinmetz, J., concurring)(noting that Wisconsin has a distinct approach to negligence under which liability is limited through policy considerations after the elements of duty and causation have been established); *Klassa,* 273 Wis. at 183 ("Whenever a court holds that a certain act does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination.").

*Gritzner v. Michael R.,* 2000 WI 68, ¶ 24 n.4, 235 Wis. 2d 781, 611 N.W.2d 906.

*Investment,* 62 Wis. 2d at 484. The public policy considerations that may preclude liability are:

> (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; [or] (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Gritzner,* 235 Wis. 2d 781, ¶ 27.

¶ 18. In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability. Only in those cases where the facts are simple to ascertain and the public policy questions have been fully presented may a court review public policy and preclude liability before trial. *Gritzner,* 235 Wis. 2d 781, ¶ 26; *Sawyer v. Midelfort,* 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999); *Bowen,* 183 Wis. 2d at 655; *Schuster v. Altenberg,* 144 Wis. 2d 223, 241, 424 N.W.2d 159 (1988); *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 542, 247 N.W.2d 132 (1976).

¶ 19. A jury's determination of negligence includes an examination of whether the defendant's exercise of care foreseeably created an unreasonable risk of harm to others. *Rockweit,* 197 Wis. 2d at 423. Public policy factors can also implicate the concept of foreseeability. In a sense, evidence regarding foreseeability can play a dual role. Besides having the aid of the jury's opinion when assessing liability, a judge will also be

aided by the facts that were brought to light during the jury trial. Having examined the law, we next apply those principles to the facts in this case.

IV

¶ 20.   The court of appeals erred in affirming the summary judgment on public policy grounds. This case requires a full factual resolution before application of a public policy analysis. It is not one of those simple cases where public policy can be used to limit liability before finding negligence. Here, there remain genuine issues of material fact, and public policy factors limiting liability should be considered only after a full resolution of the facts at trial.

¶ 21.   It is desirable to have a full trial to precede the court's determination because the issues in this case are complex and the factual connections attenuated. *Bowen,* 183 Wis. 2d at 655. A jury will hear testimony about the standard of care that a reasonable property manager would exercise in inspecting a vacated apartment. Oakbrook and Meriter claim that there was no negligence on their part. Alvarado, however, claims that if Oakbrook had performed a thorough inspection of the apartment, as it should have, then the firework would have been found. In his deposition, Alvarado's expert opines that industry practice is to conduct an adequate inspection before allowing employees and contractors onto the premises. He asserts that ordinary care requires a property manager to have a safety program which anticipates and addresses potential hazards:

> Well, they have a big responsibility in their capacity of managing residential housing. . . . There's all kinds of things to be considered by a company that — that's in

charge of managing property. . . . I could talk about that for hours, but the main idea is that you have to anticipate potential hazards and deal with them in some way. And having a hazardous material or hazardous item in an apartment is something that they're required to anticipate and have a plan and a program to deal with.[3]

¶ 22. This case is similar to *Coffey,* in which this court concluded that a full trial should precede a determination that policy considerations preclude liability based on a negligent inspection. *Coffey,* 74 Wis. 2d at 543. In that case, a tenant suffered losses as the result of a fire at its leased premises. The tenant sued a building inspector and the City of Milwaukee claiming that they were negligent because the standpipes necessary to furnish the water to fight fire at the leased premises were defective and had not been properly inspected.

¶ 23. In examining whether public policy considerations should preclude liability, the *Coffey* court determined that a full factual resolution was necessary for a fair and complete evaluation of the policy considerations. *Id.* The court explained that the case involved the complex issue of municipal tort liability arising out of the alleged negligence of a building inspector in carrying out fire inspections. *Id.*

¶ 24. The court concluded that findings as to actual negligence, damage, and the causal relationship between them would be material and helpful in evaluating the public policy considerations. *Id.* Accordingly, it refused to preclude liability on public policy grounds prior to a full factual resolution.

---

[3] Deposition testimony of Frank Burg, P.E., September 29, 2000, p. 34.

¶ 25. Analogous to *Coffey,* this case involves facts that are not simple to ascertain. It addresses the tort liability of property managers arising out of the alleged negligence of an inspector in carrying out apartment inspections. Like *Coffey,* a sufficient factual basis is not presented here for considering, evaluating, and resolving the public policy issues involved. Findings as to actual negligence, damages and the causal relationship between them would be material and helpful in evaluating the public policy considerations.

¶ 26. The parties dispute the purpose of Oakbrook's inspection. Alvarado claims part of the inspection's purpose was safety, while Oakbrook contends the inspection was only to note needed repairs, cleaning, and security-deposit withholdings. A jury would hear testimony about what constitutes a proper inspection, and whether Oakbrook's inspection satisfied that obligation. Ultimately, a jury would have determined whether Oakbrook had instituted adequate safety measures, and whether Oakbrook was negligent for failing to instruct contractors about what procedure to follow when a dangerous object is found.

¶ 27. When the circuit court granted summary judgment in favor of Oakbrook and Meriter, it concluded that Oakbrook and Meriter did not owe Alvarado a duty to exercise ordinary care. However, everyone owes a duty of ordinary care to all persons. The effect of the circuit court's summary judgment was to limit the imposition of liability. *Bowen,* 183 Wis. 2d at 645; *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 183, 77 N.W.2d 397 (1956) ("whenever a court holds that a certain act does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination").

¶ 28. Likewise, albeit with a different rationale, the court of appeals limited liability by applying public policy factors. Neither the court of appeals nor the circuit court had the benefit of a full presentation of facts or a jury's verdict on negligence before limiting liability. Because there remain genuine issues of material fact, summary judgment was erroneously granted.

¶ 29. Summary judgment is uncommon in negligence actions, "because the court 'must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [the defendants] failed to exercise ordinary care.' " *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 2, 241 Wis. 2d 804, 623 N.W.2d 751 (citations omitted). The concept of negligence is peculiarly elusive, and requires the trier of fact to pass upon the reasonableness of the conduct in light of all the circumstances, " 'even where historical facts are concededly undisputed.' " *Id.* Ordinarily, this is not a decision for the court.

¶ 30. In sum, we determine that there remain genuine issues of material fact. Here, public policy factors limiting liability should be considered only after a full resolution of the facts at trial. The court of appeals erred when it affirmed the grant of summary judgment limiting liability based on public policy factors. Accordingly, we reverse the court of appeals and remand the action to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 31. JON P. WILCOX, J., did not participate.

¶ 32. DIANE S. SYKES, J. *(dissenting)*. I re-

spectfully dissent. The majority concludes that "the court of appeals erred when it affirmed the grant of summary judgment limiting liability based on public policy factors." Majority op., ¶¶ 1, 30. I disagree. The court of appeals properly evaluated the public policy limitations on liability in this case, and properly did so in advance of trial, affirming the circuit court's order of summary judgment.

¶ 33. As the majority notes, negligence law in Wisconsin is based on the dissent in *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 101–05 (N.Y. 1928) (Andrews, J., dissenting), in which Judge Andrews of the New York Court of Appeals described negligence as a breach of the duty shared by all members of society to "refrain[ ] from those acts that may unreasonably threaten the safety of others." Majority op., ¶ 13; *see also A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974) (describing Wisconsin's adoption of the *Palsgraf* dissent). This is the duty of ordinary care, and it is measured by reference to a "reasonable person" standard, which is applied to evaluate the nature and foreseeability of the risk of harm associated with the conduct in question in order to determine whether a defendant was negligent. Majority op., ¶¶ 14, 19; *see also* Wis JI—Civil 1005.

¶ 34. The duty of ordinary care can be breached (that is, a person can be negligent) by either an act or an omission, if a reasonable person under similar circumstances would recognize that the act or omission creates an unreasonable risk of injury or damage to another.[1]

---

[1] Wisconsin juries are instructed on negligence as follows:

A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care

The determination of negligence is followed by a determination of causation and damages.[2] Although these are generally factual questions for the jury, there are some circumstances, not implicated here, under which the determination of negligence involves a mixed question of fact and law. *Rockweit v. Senecal,* 197 Wis. 2d 409, 418–19, 541 N.W.2d 742 (1995).

¶ 35. However, it is not always true that negligence + causation + damages = liability. Considerations of public policy may preclude the imposition of liability even where the facts establish that a negligent act or omission on the part of the defendant was a cause of the plaintiff's damages. This is purely a question of law for the court. *Stephenson v. Universal Metrics, Inc.,* 2002 WI 30, ¶ 42, 251 Wis. 2d 171, 197, 641 N.W.2d 158 ("The application of public policy considerations is a function of the court."); *Rockweit,* 197 Wis. 2d at 425 ("A finding of nonliability made in terms of public policy is a question of law which the court alone decides.").

¶ 36. Accordingly, we observed last term that "in Wisconsin, common law limitations on liability are determined not by reference to the absence of a duty,

and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

Wis JI—Civil 1005.

[2] Causation is determined by reference to a "substantial factor" test. The jury determines whether the defendant's negligence was "*a* cause"—not "*the* cause"—of injury or damage to the plaintiff, because there can be more than one cause of a plaintiff's injury or damage. Wis JI—Civil 1500 (emphasis in original). A defendant's negligence is "a cause" of a plaintiff's injury or damage if it was a substantial factor in producing the injury or damage. *Id.*

but as a matter of public policy." *Stehlik v. Rhoads*, 2002 WI 73, ¶ 52, 253 Wis. 2d 477, 645 N.W.2d 889. This is because "[a]ll members of society are 'held, at the very least, to a standard of ordinary care in all activities.'" *Id.* (quoting *Gritzner v. Michael R.*, 2000 WI 68, ¶ 22, 235 Wis. 2d 781, 611 N.W.2d 906). The public policy limitations on liability are as follows:

> When determining whether or not to limit a defendant's tort liability on public policy grounds, this court has identified a number of factors that must be considered. Recovery against a negligent tortfeasor can be denied on the grounds of public policy when (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

*Stephenson*, 251 Wis. 2d 171, ¶ 43 (citing *Rockweit*, 197 Wis. 2d at 426).

¶ 37. This distinction between the determination of negligence and the imposition of liability is consistent with the *Palsgraf* dissent: "As was said by Mr. Justice Holmes many years ago, '[t]he measure of the defendant's duty in determining whether a wrong has been committed is one thing, the measure of liability when a wrong has been committed is another.'" *Palsgraf*, 162 N.E. at 102 (quoting *Spade v. Lynn & Boston R.R. Co.*, 52 N.E. 747, 748 (Mass. 1899)).

¶ 38. The majority recites the public policy limitations on liability but refuses to apply them, concluding that "[t]his case requires a full factual resolution

before application of a public policy analysis." Majority op., ¶¶ 17, 20. In this regard, the majority asserts that "[i]t is desirable to have a full trial to precede the court's determination [of public policy] because the issues in this case are complex and the factual connections attenuated." Majority op., ¶ 21. I disagree.

¶ 39.  I recognize that we have said it is usually "better practice" or "generally better procedure" to await resolution of the factual issues in a negligence case before submitting it to public policy analysis. *Gritzner,* 235 Wis. 2d 781, ¶ 26 (lead opinion); *id.,* ¶ 83 (Abrahamson, C.J., concurring) (majority opinion on this issue); *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 265, 580 N.W.2d 233 (1998). However, we have also said that "[t]he assessment of public policy does not necessarily require a full factual resolution of the cause of action by trial." *Stephenson,* 251 Wis. 2d 171, ¶ 42; *see also Miller,* 219 Wis. 2d at 265; *Hass v. Chicago and N. W. Ry. Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970). More specifically:

> The application of public policy considerations is solely a function of the court . . . and does not in all cases require a full factual resolution of the cause of action by trial before policy factors will be applied by the court. There may well be cases, of course, where the issues are so complex, or factual connections so attenuated, that a full trial must precede the court's determination. Here, however, the question of public policy is fully presented by the complaint and demurrer.

*Hass,* 48 Wis. 2d at 326–27. As a further example, in our seminal case on the tort of negligent infliction of emotional distress, we held:

> The application of public policy considerations is a function solely of the court. While it is generally better

procedure to submit negligence and cause-in-fact issues to the jury before addressing legal cause, that is, public policy issues, . . . the circuit court or this court may grant summary judgment on public policy grounds before a trial or a court may bar liability on public policy considerations after trial. When the pleadings present a question of public policy, the court may make its determination on public policy grounds before trial. In contrast, when the issues are complex or the factual connections attenuated, it may be desirable for a full trial to precede the court's determination.

In this case this court is determining public policy considerations before trial because the facts presented are simple, and because the question of public policy is fully presented by the complaint and the motion to dismiss.

*Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 654–55, 517 N.W.2d 432 (1994) (footnotes and citations omitted).

¶ 40. Thus, it is not uncommon for courts to decide on summary judgment that negligence liability should be limited based upon considerations of public policy. Some cases are factually uncomplicated and fully conducive to a pre-trial legal determination on the applicability of public policy limitations on liability. This is such a case.

¶ 41. The majority's rejection of pre-trial public policy analysis in this case is unwarranted. To the extent that it discourages the lower courts from evaluating public policy liability limitations on motions for summary judgment, it will produce two divergent effects: 1) there will be an increase in unnecessary trials and appeals (where the circuit or appellate courts would otherwise have precluded liability pre-trial but now consider themselves constrained to do it only post-trial

because of the majority's decision here); and 2) there will be an expansion of liability (where the circuit or appellate courts consider themselves constrained against precluding liability on public policy grounds because of the presence of a jury verdict on negligence).

¶ 42.  While I have no quarrel with the "better practice" general rule noted above, I do not agree that the facts of this case are so complex that the evaluation of public policy limitations on liability must await a jury verdict on negligence, cause-in-fact and damages. Judicial gate-keeping on this potentially dispositive legal issue is extremely important given the breadth and potential reach of the definition of negligence in this state. This was an important part of the *Palsgraf* dissent. What we in Wisconsin refer to as public policy limitations on liability, Judge Andrews catalogued as factors that govern the court's determination of legal or "proximate cause."

¶ 43.  Judge Andrews said that the duty of ordinary care is owed to all who might be injured as a consequence of an unreasonably risky (i.e., negligent) act or omission, but he also said "there is one limitation. The damages must be so connected with the negligence that the latter may be said to be the proximate cause of the former." *Palsgraf,* 162 N.E. at 103. The negligence, he said, might be "[a] cause, but not the proximate cause. What we [ ] mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics." *Id.* This judicial line-drawing relies upon "common sense" and "fair judgment," and "endeavor[s] to make a rule in each case that will be practical and in keeping with the general understanding of mankind." *Id.* at 104.

¶ 44. Public policy limitations on liability are decided by the court as a matter of law, but the majority nevertheless considers the "jury's opinion" to be an "aid" to the court in making that decision. Majority op., ¶ 19. In this regard, the majority seems to be suggesting that the jury should influence the court's assessment of whether public policy requires non-liability as a matter of law. Courts decide questions of law independently, without deference to the jury. As a practical matter, however, most judges find it difficult to throw out a jury verdict.

¶ 45. This case is amenable to a pre-trial application of the six-factor public policy analysis. The case is not complex, and the historical facts are undisputed. We do not need a jury verdict on negligence, causation, and damages in order to determine whether public policy requires nonliability as a matter of law. I agree with the court of appeals that the first public policy factor (remoteness) and the third (extraordinary result) preclude liability here, even if a jury were to find causal negligence on the part of the apartment owner and manager. I would also conclude that the second factor (disproportionality of culpability to injury) is implicated in this case.

¶ 46. Dora Alvarado's injury was unquestionably tragic and devastating. But the accident that caused it occurred because she mistook a firework for a candle, and lit that firework in the pilot light of an oven that she was cleaning, in an attempt to preserve the pilot light flame in case it went out while she was vacuuming the oven's interior. As a matter of law, such an injury is too remote from the alleged negligent inspection by the apartment owner and manager, as well as too extraordinary and too disproportionate to that alleged negligence. I would affirm the court of appeals.

¶ 47.   I am authorized to state that Justice DAVID T. PROSSER, JR. joins this dissent.