COURT OF APPEALS
DECISION
DATED AND FILED

September 26, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP490**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV4578

IN COURT OF APPEALS
DISTRICT I

---

ROSS KOPFER, LISA KOPFER, JACOB ROSS KOPFER, MARYCLAIRE GRACE KOPFER, AND SARAH ANN KOPFER,

PLAINTIFFS-APPELLANTS,

CARL OWEN, LANDMARK AMERICAN INSURANCE COMPANY, FEDERATED MUTUAL INSURANCE COMPANY, ARTISAN AND TRUCKERS CASUALTY CO., CLAYTON MORTENSON, JORDAN KOSINSKI, ESTATE OF JOSEPH KOSINSKI, AMERICAN FAMILY MUTUAL INSURANCE CO., DAWN MARSHALL, FIRST DAKOTA INDEMNITY CO., TROY LARSEN, TRACY LARSEN, RANDY GORDON, DANICA GORDON AND COURTS HEALTH BENEFITS PLANS COOPERATION,

INTERVENORS,

ESTATE OF SAMANTHA ROSE MCMULLEN,

INTERVENOR-CO-APPELLANT,

UNITEDHEALTHCARE INSURANCE COMPANY,

INVOLUNTARY-PLAINTIFF,

WISCONSIN DEPARTMENT OF ADMINISTRATION, BUREAU OF STATE RISK MANAGEMENT AND QUARTZ HEALTH BENEFIT PLANS CORPORATION,

INTERVENORS-INVOLUNTARY-PLAINTIFFS,

**v.**

**ERIC DANIEL LALOR, SECURA INSURANCE, A MUTUAL COMPANY AND SHEPARD LOGISTIC SOLUTIONS LLC,**

DEFENDANTS-RESPONDENTS,

**SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST AND K EXPRESS INC.,**

DEFENDANTS-CO-APPELLANTS,

**GEICO CASUALTY COMPANY AND ZURICH AMERICAN INSURANCE COMPANY,**

INVOLUNTARY-DEFENDANTS.

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Ross Kopfer appeals from an order of the circuit court granting summary judgment in favor of Eric Daniel Lalor and dismissing Kopfer's claims.[1] Kopfer argues that summary judgment is inappropriate because

---

[1] For ease of reference, we refer to the parties in this appeal as Kopfer and Lalor. However, we recognize that Ross Kopfer, joined by his wife and children, filed the complaint in this case, and Lalor is joined by his employer and his employer's insurer, Shepard Logistic Solutions, LLC and Secura Insurance, A Mutual Company. Additionally, Kopfer has been joined by additional parties to this action in pursuing this appeal, including the Estate of Samantha Rose McMullen, Selective Insurance Company of the Southeast, and K Express, Inc.

whether Lalor was a substantial factor in causing Kopfer's injuries is a question of fact for the jury and, alternatively, that public policy does not preclude the imposition of liability. Upon review, we conclude that Lalor was not a substantial factor in producing Kopfer's injuries and therefore, was entitled to judgment as a matter of law. Accordingly, we affirm.

## BACKGROUND

¶2 This case arises out of a number of accidents that occurred in the morning hours of June 12, 2020, on northbound I-39/90/94 near the Town of Arlington in Columbia County. The first accident occurred around 3:30 a.m. when two semi-tractor trailers collided. Emergency personnel responded to the scene of the accident and closed the far right lane.

¶3 The second accident (the Lalor accident) occurred at approximately 4:51 a.m. when Lalor, driving a box truck, collided with the emergency personnel that were on the scene assisting with the prior accident. Additional emergency personnel responded to the scene at approximately 5:39 a.m., and all three lanes of traffic were closed. Traffic was diverted off the highway, and the aftermath resulted in a traffic backup approximately two miles long. Emergency personnel parked their vehicles perpendicular across the roadway, lit flares, and placed barrels and electronic signs along the roadway to alert motorists of the accident and divert them off the highway to an alternate route. Lalor was transported from the scene of the accident to the hospital, where he arrived at about 6:09 a.m.

¶4 Kopfer was driving northbound on the same highway on the morning of June 12, 2020, and he was forced to come to a stop in the traffic backup. While he was stopped on the highway, another semi-tractor truck, driven by Philip Anthony Bruno, failed to stop, causing a third accident (the Kopfer

3

accident) when it collided with Kopfer's vehicle, as well as several others. Kopfer was transported to the hospital with severe injuries, which he lists as a transected aorta, a lacerated kidney, a lacerated liver, compound fractures to his lower right leg, a fractured pelvis, collapsed lung, perforated diaphragm, twelve broken ribs, perforated colon, and a fractured eye orbital. Bruno and several others died. The Kopfer accident occurred at approximately 6:45 a.m., and it was located roughly two miles down the road from the Lalor accident.

¶5 Kopfer subsequently filed a summons and complaint, naming Lalor, Secura Insurance, A Mutual Company, Shepard Logistic Solutions, LLC, Selective Insurance Company of the Southeast, and K Express Inc.[2] In the complaint, Kopfer alleged claims for negligence and vicarious liability.

¶6 Lalor, joined by Shepard Logistic Solutions and Secura Insurance, moved for summary judgment.[3] In his motion, he argued that he was not a substantial factor in causing Kopfer's injuries because the Lalor and Kopfer accidents were "two entirely separate accidents that are not connected through an unbroken sequence of events," and therefore, he was entitled to judgment as a matter of law because his negligence was "not actively operating" at the time of Kopfer's accident. Additionally, he argued that the public policy factors preclude imposing liability on Lalor for Kopfer's injuries. Specifically, Lalor argued that

---

[2] Shepard Logistic Solutions employed Lalor, and Secura Insurance is the insurance carrier for Shepard Logistic Solutions. K Express employed Bruno, and Selective Insurance is the insurance carrier for K Express.

In addition to the defendants named by Kopfer in the original complaint, several other parties, including other individuals involved in the Kopfer accident, intervened and were added after the filing of the original complaint.

[3] Lalor alternatively moved to dismiss the corporate negligence claims that Kopfer filed.

4

Kopfer's injuries were too remote from Lalor's negligence and holding Lalor liable would enter a field with no sensible or just stopping point.

¶7     The circuit court agreed with Lalor, granted Lalor's motion, and dismissed Kopfer's claims with prejudice.  Kopfer appeals.

## DISCUSSION

¶8     On appeal, Kopfer argues that the circuit court erroneously granted Lalor's motion for summary judgment.  Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2) (2021-22).[4]  "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶9     Kopfer argues that summary judgment is inappropriate in this case because whether Lalor was a substantial factor in causing Kopfer's injuries is a question for the jury.[5]  He provides several statistics about the likelihood of a secondary accident in the aftermath of a primary accident.  Based on these

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[5] Kopfer additionally argues that the public policy factors of *Alvarado v. Sersch*, 2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350, do not preclude the imposition of liability.  As a result of our conclusion today, we need not address Kopfer's public policy argument.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

statistics, Kopfer argues that the Kopfer accident was a foreseeable consequence of Lalor's ongoing negligence from the Lalor accident and that Lalor can be held responsible for the Kopfer accident. He states, "Unless no reasonable person could differ on the inferences to be made from the evidence, the causation analysis in secondary crash situations is a factual determination to be made by the jury."

¶10    "Whether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable people could differ on the issue, and the question only becomes one of law for judicial decision if reasonable people could not disagree." *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 187, ¶9, 285 Wis. 2d 766, 703 N.W.2d 743. To be a cause-in-fact of the injury, the negligence must be a "'substantial factor' in producing the injury." *Id.*, ¶11. "The phrase, 'substantial factor,' denotes that the conduct has such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular sense." *Id.* (citation omitted). "To prove that a tortfeasor's negligence was a substantial factor in producing a plaintiff's injuries, it must be shown that there was an 'unbroken sequence of events' where the negligence of the tortfeasor was actively operating at the time of the accident which produced the plaintiff's injury." *Id.* (citation omitted).

¶11    In the case of a multi-vehicle accident, "the negligence of persons in an initial accident may expose them to liability for damages resulting from subsequent impacts." *Id.*, ¶15. However, as this court concluded in *Cefalu*, not all multi-vehicle accidents result in liability for subsequent impacts, and when this court addressed a multi-vehicle accident in *Cefalu*, we concluded that the initial rollover accident "was not a substantial factor in bringing about, and therefore not a cause-in-fact" of a subsequent accident. *Id.*, ¶2. Thus, we turn to the facts of *Cefalu*.

¶12 In *Cefalu*, a truck overturned near the intersection of Highways 45 and 36 in the City of Muskego when it attempted to a make a left turn. *Id.*, ¶3. Emergency personnel arrived on the scene, took control of the nearby intersection, and began directing traffic through the intersection in order to allow for the cleanup of the accident nearby. *Id.*, ¶4. Approximately thirty minutes after the rollover accident, a fire truck, directed by emergency personnel already at the scene, attempted to enter the intersection of Highways 45 and 36, and the fire truck collided with another vehicle in the intersection. *Id.*, ¶¶5-6.

¶13 We concluded that, as a matter of law, the driver from the initial rollover accident was not a substantial factor in producing the second accident in the intersection and thus was not a cause-in-fact. *Id.*, ¶2. In reaching this conclusion, we "highlight[ed] the factual distinctions between the circumstances surrounding the two accidents and the circumstances surrounding the accidents" of prior multi-vehicle accident cases. *Id.*, ¶¶16-18. We stated:

> First, in all three of the multi-vehicle collision cases, the subsequent accident occurred when another vehicle physically collided with the scene of the earlier accident. Here, there was a physical separation between the two accidents…. Second, … the initial and subsequent collisions were slightly closer in time than the two accidents in this case.
>
> Third, in the three previous cases, the subsequent accident occurred before the accident scene had been secured by emergency personnel. Here, … emergency personnel from various departments arrived at the accident scene.
>
> Finally, in the other chain reaction accident cases, the drivers involved in the subsequent accidents were not aware of the other accident until moments before impact.

*Id.* After so doing, we concluded that "there does not exist an unbroken sequence of events connecting the two accidents" such that the rollover accident was a

7

substantial factor in producing the second accident, and we concluded that "[t]his [was] the only reasonable conclusion that can be drawn from the facts presented." *Id.*, ¶¶2, 19.

¶14     Thus, to determine whether Lalor was a substantial factor in producing the Kopfer accident, we look to the same facts we considered important in *Cefalu*.  In particular, we look to the physical separation between the accidents, the time between the accidents, the presence of emergency personnel at the scene of the accidents, and whether "the drivers involved in the subsequent accidents were not aware of the other accident until moments before impact."  *Id.*, ¶¶16-18.

¶15     Turning to the facts of this case, we likewise conclude that Lalor's negligence was not "actively operating" at the time of the Kopfer accident and, therefore, Lalor was not a substantial factor in producing Kopfer's injuries.  Similar to the situation we confronted in *Cefalu*, "there does not exist an unbroken sequence of events connecting the two accidents."  *See id.*, ¶2.  In fact, as in *Cefalu*, "[t]hese factors that are present in this case, but which were not present in the other multi-vehicle cases, clearly break the sequence of events connecting [Lalor's] accident to the [Kopfer] collision."  *See id.*, ¶19.

¶16     More specifically, the Lalor and the Kopfer accidents were separated by both time and space.  The Kopfer accident happened roughly two hours after the Lalor accident, and in fact, Lalor was no longer at the scene of the accident by the time the Kopfer accident occurred.  Additionally, while the Lalor and Kopfer accidents occurred on the same roadway, the Kopfer accident occurred two miles away from the Lalor accident.

¶17     The scene of the Lalor accident had also been secured by emergency personnel by the time of the Kopfer accident.  At the time of the Kopfer accident,

emergency personnel had shut down the highway, and barrels and other traffic control devices were placed on the highway to alert drivers of the accident and divert the traffic off the highway to an alternate route. "These steps taken to secure the area substantially decreased the likelihood of another collision[.]" *See id.*, ¶17.

¶18 In an attempt to distinguish his case from *Cefalu*, Kopfer states that we must take into account the statistics and the nature of the roadway as a limited access highway where the speed limit is seventy miles per hour and therefore, the two-mile separation can be traveled in under two minutes. We are unpersuaded. First, general statistics about secondary accidents tell us nothing about the specifics of the Lalor and Kopfer accidents and whether the Lalor accident was in any way a cause of the Kopfer accident. Second, as we noted in *Cefalu*, the emphasis on the physical separation of the accidents is whether "the subsequent accident occurred when another vehicle physically collided with the scene of the earlier accident." *See id.*, ¶16. Thus, because the Kopfer accident was not a physical collision with the vehicles involved in the Lalor accident, we consider them physically separated as we did in *Cefalu*.

¶19 Furthermore, as Lalor emphasizes, hundreds of other cars were able to come to a complete stop prior to the Kopfer accident, thereby demonstrating that the scene was secure, there was ample time to come to a complete and safe stop, and hundreds of other drivers were aware of the roadway conditions that morning. This was not, therefore, a case where drivers were unaware of the need to stop until moments before impact. *See id.*, ¶18.

¶20 In reaching this conclusion, we recognize, as we did in *Cefalu*, that our supreme court has previously determined that negligence from a prior accident

was still actively operating and a cause of subsequent accidents in *Johnson v. Heintz* (*Johnson I*), 61 Wis. 2d 585, 213 N.W.2d 85 (1973), *Johnson v. Heintz* (*Johnson II*), 73 Wis. 2d 286, 243 N.W.2d 815 (1976), and *Voigt v. Riesterer*, 187 Wis. 2d 459, 523 N.W.2d 133 (Ct. App. 1994). However, unlike the Lalor and Kopfer accidents here, the subsequent accidents in *Johnson I*, *Johnson II*, and *Voigt* occurred in the same location as the initial accident and within such a short time frame that the participants of the initial accident were still on the scene and emergency personnel had yet to respond. *See Johnson I*, 61 Wis. 2d at 588; *Voigt*, 187 Wis. 2d at 462. Thus, we conclude here, as we did in *Cefalu*, that *Johnson I*, *Johnson II*, and *Voigt* are factually distinguishable and that these factual distinctions compel a different result than that reached in *Johnson I*, *Johnson II*, and *Voigt*.

¶21 Rather, as noted above, we conclude that *Cefalu* compels our conclusion in this case as a result of its factual similarity, and under *Cefalu*, we conclude that the only reasonable conclusion from the facts presented is that Lalor was not a substantial factor in producing the Kopfer accident and, thus, is not a cause in fact of Kopfer's injuries.[6] Accordingly, we conclude that Lalor was entitled to judgment as a matter of law, and the circuit court properly granted Lalor's motion for summary judgment. Therefore, we affirm.

*By the Court.*—Order affirmed.

---

[6] We note that Kopfer cites to several cases from other jurisdictions in support of his argument. We decline to accept Kopfer's invitation to apply those cases here. *See State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930 ("Although a Wisconsin court may consider case law from such other jurisdictions, obviously such case law is not binding precedent in Wisconsin, and a Wisconsin court is not required to follow it.").

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.